# UTAH CONST. CO. v. STATE HIGHWAY COMMISSION OF WYOMING.

Circuit Court of Appeals, Eighth Circuit. December 21, 1927.

No. 7793.

1. Contracts ⊂⊃186(2)—State Highway Commission could not be sued under contract for construction of highway unless it was party to contract.

State Highway Commission cannot be sued at law on a contract for construction of highway unless it is a party to the contract, since only those who are named or described in an indenture as parties thereto can sue or can be sued on such instrument.

2. Courts ⊂⊃307(1)—Suit against State Highway Commission held not one against state as affects federal court jurisdiction for diverse citizenship (Comp. St. Wyo. 1920, §§ 3025–3037; Const. Wyo. art. 16, § 9).

Wyoming State Highway Commission, created by Comp. St. Wyo. 1920, §§ 3025–3037, pursuant to authority granted by Const. Wyo. art. 16, § 9, was suable as such under contract for construction of highway, and action against it was not one against the state; hence federal court had jurisdiction of action against it on showing diverse citizenship.

**3. Courts** ⟨⟩322(2)—**Nonresident plaintiff's complaint alleging that all members of defendant State Highway Commission resided in state sufficiently alleges diversity of citizenship.**

Complaints in action by nonresident highway construction contract against State Highway Commission, alleging that each member of commission is resident of the state, sufficiently alleges diversity of citizenship to give federal court jurisdiction.

**4. States** ⟨⟩78—**Members of state Highway Commission held not personally liable on highway contract (Comp. St. Wyo. 1920, §§ 3025–3037; Const. Wyo. art. 16, § 9).**

Members of Wyoming State Highway Commission, created by Comp. St. Wyo. 1920, §§ 3025–3037, pursuant to authority of Const. Wyo. art. 16, § 9, *held* not personally liable under contract for construction of highway, since acts in execution of contract were official and not of a personal character.

Scott, District Judge, dissenting.

In Error to the District Court of the United States for the District of Wyoming; T. Blake Kennedy, Judge.

Action by the Utah Construction Company against the State Highway Commission of Wyoming. To review an order of dismissal (16 F.[2d] 322), plaintiff brings error. Reversed, with directions.

Prior to 1916 the state of Wyoming could not engage in any work of internal improvement unless authorized by a two-thirds vote of the people. In that year the Constitution was amended, the amendment reading:

"The provision of section 6 of article XVI of this Constitution prohibiting the state from engaging in any work of internal improvement unless authorized by a two-thirds vote of the people shall not apply to or affect the construction or improvement of public roads and highways; but the Legislature shall have power to provide for the construction and improvement of public roads and highways in whole or in part by the state, either directly or by extending aid to counties." (Const. art. 16, § 9.)

Pursuant to this constitutional amendment the Legislature in 1919 passed an act creating a State Highway Department, now embodied in Wyoming Compiled Statutes 1920 as sections 3025–3037. We summarize the act.

Section 3025 creates a State Highway Department to consist of a State Highway Commission and a State Highway Superintendent. The commission consists of five commissioners to be first appointed by the Governor, with the advice and consent of the Senate, and after stated periods to be elected biennially. The commission shall maintain offices in the state capital to be in charge of the State Highway Superintendent; it shall have the power to sue in the name of "The State Highway Commission of Wyoming," and may be sued by such name in any court upon any contract executed by it. The Attorney General shall be the legal adviser of the commission and shall prosecute and defend all actions in which the commission shall be a party or be interested. The commission shall have a seal bearing the words, "State Highway Commission of Wyoming, Official Seal."

Section 3026: The salary of the State Highway Superintendent, whom the commission appoints, shall be fixed by the commission and under the supervision of the commissioners he shall have complete charge of laying out and establishing highways upon which any portion of the state highway fund is to be expended, except on those highways constructed, improved or maintained in co-operation with the Secretary of Agriculture of the United States, under section 8 of the Act of Congress approved July 11, 1916 (39 Stat. 358 [16 USCA § 503]), or other federal acts authorizing the use of federal funds in the building of roads. With the approval of the commission, the superintendent shall purchase all materials, supplies and equipments and shall employ such engineers and other employees as may be necessary for the proper performance of the duties of the commission in the construction of the work undertaken by it.

Section 3027: All road and bridge construction work, any part of the cost of which is paid from the state highway fund, shall be performed in accordance with plans and specifications prepared by the State Highway Superintendent and approved by the commission, and shall be performed by or under contracts awarded by the commission, and the State Highway Superintendent shall have complete charge thereof, except on those highways constructed in co-operation with the Secretary of Agriculture under Acts of Congress. Improvements costing more than $2,000 shall be constructed upon contracts awarded to the lowest responsible bidder after public notice. Improvements costing less than $2,000 may be constructed by the commission upon force account or upon contract awarded on public notice. The commission shall adopt general rules regulating the publication of notice to bidders and the awarding of contracts.

Section 3028: It is made the duty of the State Highway Commission from time to time to designate public highways to be

known as state highways, which may coincide, in whole or in part, with county roads theretofore legally established, and whenever such state highway shall be defined and designated by resolution duly entered in the minute record of the said commission, the title and interest of the respective counties and so much of the road and right of way as shall be so designated shall pass to and vest in the state of Wyoming. Rights of way not acquired from counties may be acquired by purchase or gift or by condemnation proceedings brought by the commission.

Section 3029: Except as to work on highways performed in co-operation with the Secretary of Agriculture of the United States, the construction and maintenance of all state highways, including bridges and culverts thereon, shall be performed at the expense of the state and by and under the supervision of the commission and State Highway Superintendent.

Section 3030: The commission may co-operate with counties in the construction of county roads, bridges and culverts. All such co-operative work shall be performed under the control and supervision of the commission and the State Highway Superintendent in accordance with plans and specifications prepared by the Superintendent, but shall not be commenced until the county shall have entered into agreement with the commission to pay not less than one-half of the total cost of such work to the state and the entire cost of maintaining said highway thereafter.

Section 3031: The state assents to the provisions of the Act of Congress approved July 11, 1916, and to amendatory acts granting federal aid to states in the construction and improvement of public roads, and the State Highway Commission is authorized to enter into all contracts and agreements with the United States for that purpose. The good faith of the state is pledged to provide its share of the funds for construction and maintenance. The commission is authorized to co-operate with the Secretary of Agriculture for that purpose. Where the road to be improved is a state highway, the state's share of the expense shall be borne entirely by the state. If a county highway, the county must pay into the state highway fund its share of the estimated cost and bind itself to pay all subsequent maintenance.

Section 3032: It is made the duty of the State Highway Superintendent to compile all available information relative to public roads and bridges within the state and to prepare standard plans and specifications for the construction of roads, culverts, and bridges. He may call upon the boards of county commissioners for assistance in gathering the necessary data.

Section 3033: The state highway superintendent shall make annual reports to the commission of the transactions of the department, and the commission shall make reports to the Governor biennially.

Section 3034: A state highway fund is created, to be in the custody and keeping of the State Treasurer. He shall place to its credit all amounts theretofore or thereafter received from the United States under said act of Congress, all moneys derived from taxes levied for the purpose of or appropriated for said fund, all moneys received from the sale of state bonds for highway construction or improvement, all moneys received from counties under co-operative agreements provided for in the act, and all moneys from any source by donations or otherwise intended for highway improvement. All moneys so credited to said fund by the State Treasurer are made available without further appropriation, but no warrant shall be drawn thereon except on voucher approved by the State Highway Superintendent.

Section 3035: $300,000 is appropriated to the state highway fund out of moneys in the state treasury not otherwise appropriated, and made available upon the passage of the act, and an additional sum of $300,000 is made available on March 1, 1920, for road purposes out of public funds then in the state treasury not otherwise appropriated.

The two remaining sections are not material.

After this writ of error was sued out, but before the cause was submitted here, the State Legislature amended section 3025 so that the part of it providing for suits by and against the commission reads thus:

"The commission shall have the power to sue in the name of the 'State Highway Commission of Wyoming,' and may be sued by such name in the courts of this state and in no other jurisdiction upon any contract executed by it."

In the spring of 1922 the commission decided to construct a state highway known as the Wind River Canyon Road, which was a federal aid project. Bids were taken, and the bids of plaintiff in error for the construction of sections B, C and D were accepted. These sections cover 13.42 miles of the road extending from Boysen Dam to the bridge in Thermopolis. Plans and specifications were submitted to the bidders. On June 1, 1922, a contract with plaintiff in error was entered into pursuant to its bid. In that contract

the state of Wyoming is named as party of the first part and Utah Construction Company, a Utah corporation, as party of the second part. The first paragraph of the contract is in these words:

"This agreement made and entered into this 1st day of June, 1922, between the state of Wyoming, acting through the State Highway Commission, and Utah Construction Company, a corporation, of Ogden, in the state of Utah, hereinafter called the contractor."

The contractor agreed to do all work and furnish all labor, material, etc., necessary to construct in good workmanlike and substantial manner and to the satisfaction of the State Highway Engineer the portion of the Wind River Canyon Road State Highway from Boysen Dam to bridge south of Thermopolis under the direct supervision of the State Highway Commission, subject to inspection at all times and approval by the Secretary of Agriculture pursuant to the provisions of the act of Congress, and in full compliance with the attached plans and specifications, which were made a part of the contract. "In consideration therefor the state of Wyoming shall pay and the contractor shall receive and accept as its full compensation under the contract the prices stipulated in the proposal" of the contractor, which was the contractor's bid. The contractor made separate bids in the form of proposals to the State Highway Commission for the construction of each of the three sections, and in each the bid was expressed in unit prices for the different kinds of work to be done, that is, the bid for each section was made on the basis of so many cents per cubic yard for different kinds of excavation and fills, so much per cubic yard for dry rubble masonry, so much per lineal foot for culverts, etc. No gross amount was named as the bid on either section, and it was agreed that the amount of work of different kinds to be done on the different sections, as stated in the specifications, was only an estimate. Returning to the terms of the contract of June first, it provides a basis for liquidating damages, if any, that might be sustained by the state of Wyoming, and it was agreed that the contractor should make payment thereof to the state of Wyoming. Monthly payments based upon approximate estimate of the amount of work done during the preceding month, were to be computed by the engineer and made to the contractor, and within a reasonable time after the acceptance of the work the State Highway Engineer was required to certify to the commission a final

estimate based upon the quantities measured by the engineer and computed according to the unit prices in the contractor's proposals, which were attached to the contract as a part thereof. This would show, as the contract recited, the total work done and the amount due the contractor therefor, after all previous payments and any other amounts retained under the provision of the contract were deducted. It provided that the State Highway Commission might require the contractor to show to its satisfaction that it had discharged all of its debts for labor, material used or amounts due subcontractors on the work. All prior partial estimates and payments were subject to correction in the final estimate and payment. The advertisement, proposal, bond of the contractor, plans and specifications attached to the contract or referred to in it were declared to be a part of the contract. The concluding paragraph of the contract is in these words:

"In witness whereof, the state of Wyoming, acting through its State Highway Commission, party of the first part, has caused these presents to be executed by its Superintendent and the seal thereof to be hereunto affixed, on the day and year first above written; and the said party of the second part has caused these presents to be executed and has hereunto affixed his hand and seal the 3d day of June, A. D. 1922.

"State Highway Commission of Wyoming,
"By L. E. Laird, Superintendent. [Seal.]
"Attest: Z. E. Sevison, Secretary.
"The Utah Construction Company,
"By W. H. Wattis, President. [Seal.]
"Attest: Warren L. Wattis, Secretary."

Later a supplemental agreement was made. It was signed in the same way and by the same parties as was the agreement of June first. The first paragraph of the supplemental agreement reads thus:

"Supplementing the contract entered into the 1st day of June, 1922, between the State Highway Commission of Wyoming, and the Utah Construction Company for the construction of the Wind River Canyon Road in Fremont and Hot Springs counties, being sections B, C and D of Federal Aid Project No. 118, the following facts and conditions are hereby mutually agreed to."

This supplemental agreement was executed about December 12, 1922. It extended the time for completion of the work by the contractor. It recited:

"In the final location and staking out of Sections B and C, it was found desirable and advantageous to make certain changes in grades and alignments from those shown on

the original plans, which changes had been anticipated by both parties, at the time of executing the contract, but the quantities involved were unknown at that time."

It substituted cement rubble masonry head walls in lieu of concrete head walls; it stated that tunnel excavation had been increased to approximately 882 lineal feet, the amount in the original contract being less than half that length; it stated that on account of increased quantities of excavation the contract could not be completed on April 1, 1923; the contractor agreed to an increased quantity of unclassified excavation on section B of approximately 30,000 cubic yards and to perform the same at the contract price called for in the original contract, to an increased quantity of unclassified excavation on section C of approximately 100,000 cubic yards and to perform the same at the unit price called for in the original contract, to construct the cement rubble masonry head walls at a unit price of $14 per cubic yard and to complete the increased amount of tunnel excavation at the contract unit price of $70 per lineal foot; and the State Highway Commission on its part agreed that the contractor might waste material from cuts and borrow material outside of the staked cross-sections for fills in order to permit the use of steam shovels for rough grading; and there is a proviso as to the basis of payment for work done in that way.

There is sharp controversy as to whether the state of Wyoming or the State Highway Commission was a party to the contract, and as bearing on that question we now note some of the clauses of the specifications, which are made a part of the contract. The specifications, in their definition of terms, say that "contract" means "the agreement between the contractor and the State Highway Commission covering the work to be performed and including the plans and specifications." They provide that each bidder must accompany his bid by money deposit equal to two per centum of the amount of the proposal in the form of cash, a draft, or a certified check payable to the State Highway Commission of Wyoming, and in case of his failure to enter into the contract and furnish the required bond the bidder's deposit shall become a donation to the state highway fund. The specifications provide in one part that the State Highway Commission may enter upon the performance of the work if the contractor fails, and in another part that the state of Wyoming may enter for the purpose of doing the work necessary to complete the contract.

Plaintiff in error brought this suit, alleging in the first count of its complaint a breach of the contract by defendant and resulting damages to it in a very large amount, for which it asked judgment. The breach, as alleged, consisted in a change of the line of the road through two of the sections; that is, a new survey for those two sections, which moved the road to be constructed back from the shore line of the river onto higher ground. Plaintiff was there at the time engaged in construction work, but it thought the changes were only those referred to in the supplemental contract. The work was thus made more difficult and costly to plaintiff. The second cause of action alleged full performance by plaintiff, that the engineer and defendant found the total amount for the work to be $511,953.38, of which $88,773.81 has not been paid, and judgment is prayed for that amount. The commission demurred to the complaint, on the ground that the suit was against the state of Wyoming and for that reason the court was without jurisdiction; also on the ground that the first count did not state facts sufficient to constitute a cause of action. The demurrer was overruled and the commission answered. It denied the allegations charging it with a breach of the contract, and alleged that it was understood at the time plaintiff made its bid and the contract was entered into that the route of the road was to be changed through two sections, that a new survey was made for that purpose and the change made while plaintiff was engaged upon the work, that it had full knowledge of the change and agreed thereto. The answer alleged that with full knowledge of the changes that were made plaintiff proceeded with the work and was paid on estimates at the unit prices called for by the contract, and the plaintiff at no time prior to the completion of the building of the road made any objection or protest that it was being required to do work not called for by the contract. To this answer plaintiff replied. It admitted that it made no protest over the change in the survey until after the road was substantially completed, but alleged that it did not discover the change before that time and that it received payments as the work progressed without knowledge that it had constructed the road along an entirely new survey. We have not attempted to give in full the allegations of the pleadings but only sufficient to disclose the nature of the controversy. After plaintiff's reply came in the defendant renewed its demurrer, which was sustained and the

complaint dismissed. The assignments challenge that ruling as error.

Benjamin S. Crow, of Los Angeles, Cal. (John W. Lacey, Herbert V. Lacey, and W. L. Walls, all of Cheyenne, Wyo., on the brief), for plaintiff in error.

Marion A. Kline, of Cheyenne, Wyo. (William O. Wilson, James A. Greenwood, and John Dillon, all of Cheyenne, Wyo., on the brief), for defendant in error.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge (after stating the facts as above). The learned District Judge in finally sustaining the demurrer expressed his reasons in a written opinion. Following the rule announced on the subject in Ex parte State of New York, 256 U. S. 490, 41 S. Ct. 588, 65 L. Ed. 1057, and other cases, the conclusion was reached that the suit was in reality against the state; and that being so, the jurisdiction alleged diverse citizenship, did not exist—because the state is not a citizen. Postal Tele. Cable Co. v. Alabama, 155 U. S. 482, 15 S. Ct. 192, 39 L. Ed. 231; Minnesota v. Northern Securities, 194 U. S. 48, 24 S. Ct. 598, 48 L. Ed. 870; Hertz v. Knudson (C. C. A.) 6 F.(2d) 812; and Chicago, R. I. & P. Ry. Co. v. State of Nebraska (C. C. A.) 251 F. 279. Furthermore, it was thought that, even if the statute authorizing suits against the State Highway Commission should be taken as a waiver of the state's immunity granted by the Eleventh Amendment, still that would not confer jurisdiction where it appeared from the complaint the court was without jurisdiction. Obviously, both conclusions rest on the premise that the suit against the commission is a suit against the state.

[1] Primarily the commission could not be sued at law unless it be a party to the contract. Barring equitable innovations, with which we are not now concerned, Anson on Contracts (2d Am. Ed.) page 459, says:

" * * * The rule is best expressed in the words of Parke, B., in Beckham v. Drake, 9 M. & W. 95, 'those only can sue or be sued upon an indenture who are named or described in it as parties.' "

Looking only to the contract of June 1, 1922, it would be difficult to say that the commission was a party to it and liable to suit for its breach. Apparently it signed the contract in its own right and behalf, but the obligation to pay for the work was expressly imposed on the state, and the state, not the commission, was named as a party to it. But for the supplemental agreement we would be constrained to say the commission could not be sued. But we observe in the later agreement the parties here declared over their signatures that the agreement of June first was a contract between the States Highway Commission of Wyoming and the Utah Construction Company. That statement is rather borne out by excerpts from the specifications and is in harmony with the statute itself which authorizes the commission to make such contracts. The statute made it a legal entity for that purpose, imposed on it the duty of initiating the improvement, to supervise its construction and to make settlements with the contractor.

[2] We are not impressed with the soundness of the contention that the suit is in reality one against the state. Plaintiff seeks no relief against it, nor interference with its property, rights or functions. The commission is the sole defendant, it has no property, no power of taxation, no means of discharging a judgment should one be recovered against it. In that event it will be entirely optional with the state as to what, if anything, it will do in the premises. It will not be legally bound. But if the court has jurisdiction the controversy between the parties to the contract will be finally adjudicated, and that seems to be the limit of our present inquiry. Port of Seattle v. Oregon & W. R. R., 255 U. S. 56, 71, 41 S. Ct. 237, 65 L. Ed. 500.

[3, 4] The complaint distinctly alleges that each member of the commission is a resident and citizen of the state of Wyoming. We think there can be no doubt the commission is suable as such and that the federal court had jurisdiction because of diverse citizenship. Seemingly the identical inquiry was answered in Thomas v. Board of Trustees, 195 U. S. 207, 218, 25 S. Ct. 24, 28 (49 L. Ed. 160): " * * * as the board was entitled to sue and be sued by their collective name, and would be bound by any judgment rendered against it in that name, the jurisdiction of the Circuit Court would have sufficiently appeared, so far as the pleadings were concerned, without bringing the several persons constituting the board before the court as defendants, provided the bill had contained the additional allegation that each individual trustee was a citizen of Ohio." It hardly need be said that the members of the commission would not be personally liable, had they been made parties; because their acts were official, and not of a personal character. Hodgson v. Dexter, 1 Cranch, 345, 363, 2 L. Ed. 130; Belknap v. Schild, 161 U. S. 10, 17, 16 S. Ct. 443, 40 L. Ed. 599; Astoria Marine Iron Works v. United States Shipping Board

Emergency Fleet Corporation (D. C.) 295 F. 415, 417.

The demurrer did not challenge the second cause of action on the ground that it did not state sufficient facts; and the trial court expressed no opinion in its written memorandum on that issue as to the first cause of action. We see no cause to doubt the sufficiency of the second count as a pleading, and, as said, it was not challenged; as to the first count we leave that for the present to the court below.

Reversed, with directions to set aside the order dismissing the complaint.

SCOTT, District Judge (dissenting). I regret that I am unable to concur with the majority of the court in its opinion sustaining the jurisdiction of the District Court. I am constrained to the conclusion that the State Highway Commission of Wyoming is not a corporation. The act of the Wyoming Legislature creating the board does not purport to create a corporation, but in my opinion a mere commission to which is committed the execution of particularly described duties. It is designed to hold no title to property. It can have no financial interests of any character, and neither it nor its members are in any true sense trustees. The state legislation respecting this body as well as the act of Congress known as the Federal Highway Act, seems to contemplate mutual transactions between the national government and states. In my opinion the case was one essentially against the state of Wyoming. The case was an action at law to recover a money judgment for increased compensation for construction of the highway, and alleged to have been occasioned by a change of survey. It is conceded in the majority opinion that the State Highway Commission of Wyoming has nothing from which the judgment could be paid, and it is likewise conceded that the plaintiff can recover nothing from the individual members of the board. It is further conceded that in the event of recovery "it will be entirely optional with the state as to what, if anything, it will do in the premises." It seems to me that such an adjudication would be a mere gesture.

The case of Port of Seattle v. Oregon & W. R. R., 255 U. S. 56, 41 S. Ct. 237, 65 L. Ed. 500, cited in the majority opinion, seems to me to be clearly distinguishable. In that case the Port of Seattle was expressly created as a municipal corporation, and was empowered to hold property and receive revenue in its own legal right. As the Supreme Court there said: "The port has thus an independ-

ent financial interest in this controversy; and although the state has also an interest, suit against the port would not be prevented by the Eleventh Amendment."

I also think the case of Thomas v. Board of Trustees, 195 U. S. 207, 25 S. Ct. 24, 49 L. Ed. 160, also cited in the majority opinion, clearly distinguishable. In that case, while it was held that the bill did not allege facts showing the incorporation of the board, the bill did disclose that the board was in reality a board of trustees, "and to have the general supervision of all lands, buildings and other property belonging to said college, and of receiving by gift, devise or bequest, moneys, lands and other properties for its benefit and for the benefit of those under its charge," etc. Had the necessary diversity of citizenship been alleged and the individual members of the board been named as defendants as in the instant case, the opinion of the Supreme Court to my mind indicates that the Circuit Court would have had jurisdiction. Indeed, the answers of the Supreme Court were certified with liberty to the Circuit Court of Appeals to authorize an amendment of the bill alleging the necessary diversity of citizenship of the individual members. With the appropriate amendment, I have no doubt that in that case, as well as in the Port of Seattle Case, the court would have had jurisdiction to finally adjudicate the rights in question, and grant complete equitable or legal relief in accordance with the class of the respective cases.

I think the principle laid down in Ex parte State of New York, No. 1, 256 U. S. 490, 41 S. Ct. 588, 65 L. Ed. 1057, and Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140, is applicable to the case at bar, and that the action here was merely one against the State Highway Commission and its individual members as such. A brief interesting note will be found on the subject in 44 L. R. A. (N. S.) at page 196. I quote from the note: "In some of the cases the state agency or board is itself a corporation with general power to sue and be sued. In other cases the result in the main seems to depend upon the nature of the action or relief demanded. Thus, in the Lord Case, infra, it was a question of obtaining money out of the state treasury. * * *" "In Lord & P. Chemical Co. v. Board of Agriculture, 111 N. C. 135, 15 S. E. 1032, it was held that an action would not lie against the Board of Agriculture, its Commissioner, and the State Treasurer to, recover taxes paid under protest to it, and turned over it seems to the State Treasurer, as the board was a department of

the government, and that the action was an action against the state."

There is another serious question going to the jurisdiction of a federal court. The Legislature of the state of Wyoming, in amending the original act, provided: "The commission shall have the power to sue in the name of the 'State Highway Commission of Wyoming' and may be sued by such name in the courts of this state and in no other jurisdiction upon any contract executed by it." Laws 1927, c. 61.

The case of Smith v. Reeves, supra, was one brought by an individual against Reeves as State Treasurer of California. Section 3669 of the Political Code of California provided, in case of actions against the State Treasurer for the recovery of taxes illegally collected, that, "at the time the Treasurer demurs or answers, he may demand that the action be tried in the superior court of the county of Sacramento." It was contended in that case that by the section referred to the state had consented that its Treasurer might be sued in respect to the matters specified. Mr. Justice Harlan, in delivering the opinion of the court, said:

"It is quite true the state has consented that its Treasurer may be sued by any party who insists that taxes have been illegally exacted from him under assessments made by the State Board of Equalization. But we think that it has not consented to be sued except in one of its own courts. This is not expressly declared in the statute, but such, we think, is its meaning. The requirement that the aggrieved taxpayer shall give notice of his suit to the Comptroller, and the provision that the Treasurer may at the time he demurs or answers 'demand that the action be tried in the superior court of the county of Sacramento,' indicate that the state contemplated proceedings to be instituted and carried to a conclusion only in its own judicial tribunals. If a Circuit Court of the United States can take cognizance of an action of this character, the right given to the Treasurer by the local statute to have the case tried in the superior court of Sacramento county would be of no value; for, as the jurisdiction and authority of a Circuit Court of the United States depends upon the Constitution and laws of the United States, it could not refuse to take cognizance of the case if rightfully commenced in it and to proceed to final decree, nor could it, merely in obedience to the laws of the state, transfer it to a state court upon the demand of the State Treasurer. A federal court can neither take nor surrender jurisdiction except pursuant to the Constitution and laws of the United States.

"In Beers v. Arkansas [20 How. 527, 15 L. Ed. 991] above cited, it was further said: 'As this permission (to be sued) is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it. Arkansas, by its Constitution, so far waived the privilege of sovereignty as to authorize suits to be instituted against it in its own courts, and delegated to its General Assembly the power of directing in what courts, and in what manner, the suit might be commenced. And, if the law of 1854 [Acts Ark. 1854-55, p. 17] had been passed before the suit was instituted, we do not understand that any objection would have been made to it. The objection is that it was passed after the suit was instituted, and contained regulations with which the plaintiff could not conveniently comply. But the prior law was not a contract. It was an ordinary act of legislation, prescribing the conditions upon which the state consented to waive the privilege of sovereignty. It contained no stipulation that these regulations should not be modified afterwards, if, upon experience, it was found that further provisions were necessary to protect the public interest; and no such contract can be implied from the law, nor can this court inquire whether the law operated hardly or unjustly upon the parties whose suits were then pending. That was a question for the consideration of the Legislature. They might have repealed the prior law altogether, and put an end to the jurisdiction of their courts in suits against the state, if they had thought proper to do so, or prescribe new conditions upon which the suits might still be allowed to proceed. In exercising this latter power the state violated no contract with the parties; it merely regulated the proceedings in its own courts, and limited the jurisdiction it had before conferred in suits when the state consented to be a party defendant.' "

Now the question occurs, if a state can restrict its suability or the suability of its Treasurer or other officer as such, why may it not likewise restrict the suability of its Commission from whom it has withheld corporate capacity?

I think the judgment of the District Court should have been affirmed.