## EX PARTE IN THE MATTER OF THE STATE OF NEW YORK ET AL., PETITIONERS.

### ON PETITION FOR WRIT OF PROHIBITION AND/OR WRIT OF MANDAMUS.

No. 25, Original.　Argued December 13, 14, 1920.—Decided June 1, 1921.

1. The power to issue a writ of prohibition to prevent a District Court from exceeding its jurisdiction in admiralty is conferred upon this court by Jud. Code, § 234, and may be exercised in a clear case even where an ultimate remedy exists by appeal. Pp. 496, 503.

2. Under the Eleventh Amendment, an admiralty suit *in personam* can not be brought against a State, without its consent, by an individual, whether a citizen of the State or not. P. 497.

3. Whether a suit in admiralty is a suit against a State is determined, not by the names of the titular parties, but by the essential nature and effect of the proceeding as it appears from the entire record. P. 500.

4. In suits *in rem* against privately owned steam tugs for injuries inflicted on libelants' barges, the tug-owners, appearing as claimants, sought to implead the Superintendent of Public Works of the State of New York, alleging that the damages complained of were occasioned while the tugs were under charter to him officially and under his operation, control and management, pursuant to the state law, and praying that as such official he be cited into the suits to answer for the damages and, if not found, that the goods and chattels of the State used and controlled by him be attached. Monitions, issued accordingly, were served on him in the district. *Held*, that these proceedings against the Superintendent were *in personam*, and, considering his functions under the state laws and the ultimate

incidence of the relief sought, were essentially proceedings against the State, beyond the jurisdiction of the District Court in admiralty. P. 501. *Workman* v. *New York City*, 179 U. S. 552, distinguished. Rule absolute for a writ of prohibition.

PROHIBITION, to restrain proceedings in admiralty in the District Court. The case is stated in the opinion, *post*, 494.

*Mr. Edward G. Griffin*, with whom *Mr. Charles D. Newton*, Attorney General of the State of New York, and *Mr. George A. King*, were on the brief, for petitioners.

*Mr. Ellis H. Gidley* for respondent:

This court has not granted writs of prohibition when petitioner possessed another remedy. *In re Cooper*, 143 U. S. 472; *Ex parte Gordon*, 104 U. S. 515; *In re New York & Porto Rico S. S. Co.*, 155 U. S. 523, 531.

The District Court, having general jurisdiction over the subject-matter and over the parties, should be allowed to proceed to decision upon the merits, and if error has been or shall be committed in entertaining the claimants' contention against the charterer in the same suit with the libel against the ship, it may be later corrected on appeal. See *In re Fassett*, 142 U. S. 479, 484; *Moran* v. *Sturges*, 154 U. S. 256, 286; *Ex parte Detroit River Ferry Co.*, 104 U. S. 519; *Ex parte Hagar*, 104 U. S. 520; *In re Rice*, 155 U. S. 396; *In re Huguley Manufacturing Co.*, 184 U. S. 297; *Alexander* v. *Crollott*, 199 U. S. 580; *Ex parte Oklahoma*, 220 U. S. 191, 208, 209.

The Superintendent of Public Works is subject to the exercise of admiralty jurisdiction. The District Court unquestionably has control of the *res*, as both tugs were within the territorial jurisdiction when arrested. They were subject to maritime liens in favor of the libelants. Likewise the Superintendent was within the territorial jurisdiction when its process, issued conformably to Rule 59, was served personally upon him. Moreover, it was

alleged in the petitions filed by claimants that the Superintendent had and maintained various property under his control and direction within the district. Therefore, the only question is, whether, having such control of the subject-matter, vessels and parties by due and proper exercise of its admiralty process, the District Court might also exercise its admiralty jurisdiction against the Superintendent.

The application of the provisions of Rule 59 to these causes does not change their admiralty characteristics and does not deprive the District Court of jurisdiction. The proceedings became pure actions *in rem, sui generis,* distinctly maritime in nature, and we submit that the contrary assertion is neither based on fact nor supported by law.

The Attorney General argues that inasmuch as the *res* are not now under charter to, or in the possession of, the State, there is no basis in such a claim *in personam* against the State. It should be sufficient reply to say that such argument neglects not only the creation by disaster of a *jus in re* enforceable in admiralty by process *in rem, The John G. Stevens,* 170 U. S. 113, 117, and cases cited; but likewise takes no thought of the liability of the charterer to return the vessel to the owner free from lien. *The Barnstable,* 181 U. S. 464.

These are not, under any consideration, actions at law or in equity falling within the purview of the Eleventh Amendment. Admiralty suits are neither suits at law nor in equity, but are spoken of in contradistinction to both. 3 Story, Constitution, § 1683, original ed. Admiralty actions are *sui generis,* and are not within the term civil suits, thereby meaning suits of a civil nature at common law or in equity. *United States* v. *Bright,* Fed. Cas. No. 14,647; *Atkins* v. *Disintegrating Co.,* 18 Wall. 272.

The prerequisite in admiralty to the right to resort to a libel *in personam* is the existence of a cause of action,

maritime in its nature. *Workman* v. *New York City,* 179 U. S. 552, 573. Further, a libel *in personam* may be maintained for any cause within the jurisdiction of an admiralty court, wherever a monition can be served upon the libelee or an attachment made of any personal property or credits of his. *In re Louisville Underwriters,* 134 U. S. 488, 490. *Governor of Georgia* v. *Madrazo,* 1 Pet. 110, and *Ex parte Madrazzo,* 7 Pet. 627, distinguished.

The doctrine laid down by this court in the case of *Workman* v. *New York City, supra,* is wholly decisive of the issue here, for no distinction in the applicability of the rule there laid down was made between corporations, municipal or sovereign; the National Government alone was excepted therefrom.

These are not suits against the State; and, in any event, the question whether they are belongs to the merits rather than to the jurisdiction. *Scully* v. *Bird,* 209 U. S. 481; *Illinois Central R. R. Co.* v. *Adams,* 180 U. S. 28.

The cases in which immunity from process has been heretofore claimed and granted on the ground of sovereignty have no application. They were either—(1) actions brought directly against vessels owned or maintained as the property of a sovereign power and at the time of action possessed by it or maintained under its control, or (2) against vessels in the possession of the National Government or vessels of a friendly foreign sovereign. The principle of immunity to vessels in the possession of the National Government was first declared in *The Siren,* 7 Wall. 152, and again in *The Davis,* 10 Wall. 15. Both of those cases nevertheless held that the liens in question were capable of enforcement therein because the possession of the Government was not disturbed in so doing. See *Workman* v. *New York City,* 179 U. S. 552, 573.

The granting of immunity from process to vessels of a friendly foreign sovereign power apparently has its basis in the decision of *The Exchange,* 7 Cranch, 116, in which it was

held that a public armed vessel in the service of a sovereign at peace with the United States is not within the ordinary jurisdiction of the admiralty court, such privilege being based upon international courtesy. See *The Maipo*, 252 Fed. Rep. 627; *The Roseric*, 254 Fed. Rep. 154; *The Pampa*, 245 Fed. Rep. 137.

Nowhere is it suggested that the courtesy accorded vessels of the National Government or of a friendly foreign power can be extended to include one of the several States of the United States. If it should be thought that such doctrine should be so extended, it would still be inapplicable here, where no possession of the *res* by the State or by a state officer could be disturbed by these proceedings *in rem;* and the vessels were not, at the time of seizure, owned, maintained or possessed by the State. Moreover, a further decisive objection lies in the absence of complete sovereignty in the State of New York. Sovereignty in its essence means supreme political authority. The State of New York may not impose its local law upon the admiralty jurisdiction. *Workman* v. *New York City*, 179 U. S. 552, 557; *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, 215, 216; *The Lottawanna*, 21 Wall. 558. See also *Union Fish Co.* v. *Erickson*, 248 U. S. 308.

As between the owners and the charterer, liability for damage caused by negligence of the officers and crew under the dominion of the charterer rests with the charterer.

The State must be presumed to have contemplated the system of maritime law under which the charters were made.

Justice commends the unlimited application of the provisions of Admiralty Rule 59.

MR. JUSTICE PITNEY delivered the opinion of the court.

Three separate libels *in rem* were filed in the United States District Court for the Western District of New

York: two against the Steam Tug *Charlotte*, her engines, boilers, machinery, etc., by one Dolloff and one Wagner respectively, both residents and presumably citizens of the State of New York, to severally recover for damages alleged to have been caused to certain canal boats owned by them while navigated upon the Erie Canal in tow of the *Charlotte;* the other against the Steam Tug *Henry Koerber, Jr.,* her boilers, engines, tackle, etc., by Murray Transportation Company, a corporation of the State of New York, bailee of a certain coal barge, to recover damages alleged to have been received by the barge while navigated upon the Erie Canal in tow of the *Koerber.* In each case the tug was claimed by Frank F. Fix and Charles Fix, partners in business under the name of Fix Brothers, of Buffalo, New York, and released from arrest on the filing of satisfactory stipulations. Claimants filed answers to the several libels, and at the same time filed petitions under Admiralty Rule 59 (new Rule 56), setting up in each case that at the time of the respective disasters and damage complained of the tugs were under charter by claimants to Edward S. Walsh, Superintendent of Public Works of the State of New York, who had entered into such charter parties under authority reposed in him by an act of the Legislature of the State of New York, being c. 264 of the Laws of 1919, and had the tugs under his operation, control, and management; that if decrees should be ordered in the respective causes against the tugs the claimants, because of their ownership of the vessels, would be called upon for payment, and thus would be mulcted in damages for the disasters, to which they were total strangers; and that by reason of these facts Edward S. Walsh, Superintendent of Public Works of the State of New York, ought to be proceeded against in the same suits for such damages in accordance with the rule. The District Court, pursuant to the prayer of these petitions, caused monitions to be issued in all

three cases against Edward S. Walsh, Superintendent of Public Works, citing him to appear and answer, and, in case he could not be found, that "the goods and chattels of the State of New York used and controlled by him " should be attached. The monitions were served upon Walsh within the jurisdiction of the court.

The Attorney General of the State appeared in all three cases specially in behalf of the State and the People thereof, and of Walsh, and filed a suggestion that the court was without jurisdiction to proceed against Walsh as Superintendent of Public Works for the reason that, as appeared upon the face of the proceedings, they were suits against the State of New York in which the State had not consented to be sued. The District Court denied motions to dismiss the monitions (*The Henry Koerber, Jr.,* 268 Fed. Rep. 561), whereupon the Attorney General, on behalf of the State and the People thereof, and of Walsh as Superintendent and individually, under leave granted, filed in this court a petition for writs of prohibition and mandamus. An order to show cause was issued, to which the District Judge made a return, and upon this and the proceedings in the District Court the matter has been argued.

The record shows that the charters had expired according to their terms, and the tugs were in possession of the claimants, neither the State nor Walsh having any claim upon or interest in them. At no time has any *res* belonging to the State or to Walsh, or in which they claim any interest, been attached or brought under the jurisdiction of the District Court. Nor is any relief asked against Mr. Walsh individually; the proceedings against him being strictly in his capacity as a public officer.

The power to issue writs of prohibition to the district courts when proceeding as courts of admiralty and maritime jurisdiction is specifically conferred upon this court by § 234, Judicial Code (Act of March 3, 1911, c. 231, 36

Stat. 1087, 1156). And the fact that the objection to the jurisdiction of the court below might be raised by an appeal from the final decree is not in all cases a valid objection to the issuance of a prohibition at the outset, where a court of admiralty assumes to take cognizance of matters over which it has no lawful jurisdiction. *In re Cooper*, 143 U. S. 472, 495.

That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given: not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its own citizens, because of the fundamental rule of which the Amendment is but an exemplification. *Beers* v. *Arkansas*, 20 How. 527, 529; *Railroad Co.* v. *Tennessee*, 101 U. S. 337, 339; *Hans* v. *Louisiana*, 134 U. S. 1, 10–17; *North Carolina* v. *Temple*, 134 U. S. 22, 30; *Fitts* v. *McGhee*, 172 U. S. 516, 524; *Palmer* v. *Ohio*, 248 U. S. 32, 34; *Duhne* v. *New Jersey*, 251 U. S. 311, 313.

Nor is the admiralty and maritime jurisdiction exempt from the operation of the rule. It is true the Amendment speaks only of suits in law or equity; but this is because, as was pointed out in *Hans* v. *Louisiana, supra,* the Amendment was the outcome of a purpose to set aside the effect of the decision of this court in *Chisholm* v. *Georgia*, 2 Dall. 419, which happened to be a suit at law brought against the State by a citizen of another State, the decision turning upon the construction of that clause of § 2 of Art. III of the Constitution establishing the judicial power in cases in law and equity between a State

and citizens of another State; from which it naturally
came to pass that the language of the Amendment was
particularly phrased so as to reverse the construction
adopted in that case. In *Hans* v. *Louisiana, supra* (p.
15), the court demonstrated the impropriety of construing
the Amendment so as to leave it open for citizens to sue
their own State in the federal courts; and it seems to us
equally clear that it cannot with propriety be construed
to leave open a suit against a State in the admiralty juris-
diction by individuals, whether its own citizens or not.

Among the authorities to which we are referred is Mr.
Justice Story, who, in his commentaries on the Constitu-
tion (1st ed., § 1683; 5th ed., § 1689), stated that it had
been doubted whether the Amendment extended to cases
of admiralty and maritime jurisdiction where the proceed-
ing was *in rem* and not *in personam;* and whose doubt
was supported by a declaration proceeding from Mr.
Justice Washington at the circuit, *United States* v. *Bright*
(1809), Brightly, N. P. 19, 25, Note; 24 Fed. Cas. 1232,
1236, No. 14,647; 3 Hall's L. J. 197, 225. But the doubt
was based upon considerations that were set aside in the
reasoning adopted by this court in *Hans* v. *Louisiana.* In
*Governor of Georgia* v. *Madrazo,* 1 Pet. 110, 124, the ques-
tion whether the Eleventh Amendment extended to pro-
ceedings in admiralty was alluded to, but found unneces-
sary to be decided, because, if it did not, the case was for
the original jurisdiction of this court and not of the dis-
trict court in which it was brought; and it was held,
further, that the decree could not be sustained as a pro-
ceeding *in rem,* because the thing was not in possession
of the district court. Subsequently, in *Ex parte Madrazzo,*
7 Pet. 627, 632, an application was made to this court to
entertain a suit in admiralty against the State of Georgia,
and it was held that as there was no property in the cus-
tody of the court of admiralty, or brought within its
jurisdiction and in the possession of any private person,

the case was not one for the exercise of the admiralty jurisdiction; and that, being a mere personal suit against a State to recover proceeds in its possession, it could not be entertained, since "no private person has a right to commence an original suit in this court against a State." *Atkins* v. *Disintegrating Co.*, 18 Wall. 272, 300, *et seq.*, and *In re Louisville Underwriters*, 134 U. S. 488, are aside from the point, since they relate merely to a question of statutory construction: whether the provision of § 11 of the Judiciary Act of 1789 (1 Stat. 79, c. 20; reënacted in § 739 of the Revised Statutes, and in § 1 of Act of March 3, 1875, c. 137, 18 Stat. 470), to the effect that no civil suit should be brought against a person by original process in any district other than that of which he was an inhabitant or in which he should be found, applied to suits *in personam* in admiralty so as to prevent the court from acquiring jurisdiction over a corporation through attachment of its goods or property in a district other than that of its residence (in the former case), or by service of process upon its appointed agent (in the latter).

Much reliance is placed upon *Workman* v. *New York City*, 179 U. S. 552. But that dealt with a question of the substantive law of admiralty, not the power to exercise jurisdiction over the person of defendant; and in the opinion the court was careful to distinguish between the immunity from jurisdiction attributable to a sovereign upon grounds of policy, and immunity from liability in a particular case. Thus (p. 566): "The contention is, although the corporation *had general capacity to stand in judgment*, and was therefore *subject to the process* of a court of admiralty, nevertheless the admiralty court would afford no redress against the city for the tort complained of, because under the local law," etc. "But the maritime law affords no justification for this contention, and no example is found in such law, where one who is *subject to suit and amenable to process* is allowed to escape liability

for the commission of a maritime tort, upon the theory relied upon."

We repeat, the immunity of a State from suit *in personam* in the admiralty brought by a private person without its consent, is clear.

As to what is to be deemed a suit against a State, the early suggestion that the inhibition might be confined to those in which the State was a party to the record (*Osborn* v. *United States Bank,* 9 Wheat. 738, 846, 850, 857) has long since been abandoned, and it is now established that the question is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record. *Louisiana* v. *Jumel,* 107 U. S. 711, 719, 720, 723, 727–728; *Hagood* v. *Southern,* 117 U. S. 52, 67, *et seq.; In re Ayers,* 123 U. S. 443, 487–492; *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 10, *et seq.; Smith* v. *Reeves,* 178 U. S. 436, 438–440; *Murray* v. *Wilson Distilling Co.,* 213 U. S. 151, 168–170; *Lankford* v. *Platte Iron Works Co.,* 235 U. S. 461, 469.

Thus examined, the decided cases have fallen into two principal classes, mentioned in *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 10: "The first class is where the suit is brought against the officers of the State, as representing the State's action and liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as to compel it to specifically perform its contracts [citing cases]. The other class is where a suit is brought against defendants who, claiming to act as officers of the State, and under the color of an unconstitutional statute, commit acts of wrong and injury to the rights and property of the plaintiff acquired under a contract with the State. Such suit . . . is not, within the meaning of the Eleventh Amendment, an action against the State." The first class, in just reason, is not confined to cases where the suit will operate so as to com-

pel the State specifically to perform its contracts, but extends to such as will require it to make pecuniary satisfaction for any liability.  *Smith* v. *Reeves*, 178 U. S. 436, 439.

As has been shown, the proceedings against which prohibition is here asked have no element of a proceeding *in rem*, and are in the nature of an action *in personam* against Mr. Walsh, not individually, but in his capacity as Superintendent of Public Works of the State of New York.  The office is established and its duties prescribed by the constitution of the State; Art. 5, § 3.   He is "charged with the execution of all laws relating to the repair and navigation of the canals, and also of those relating to the construction and improvement of the canals," with exceptions not material.  By c. 264 of the Laws of 1919, effective May 3, the Superintendent is authorized to provide such facilities as in his judgment may be necessary for the towing of boats on the canals of the State, the towing service to be furnished under such rules and regulations as he shall adopt; and for that service he is authorized to impose and collect such fees as in his judgment may seem fair and reasonable; the moneys so collected to be deposited by him in the state treasury. For the carrying into effect of this act the sum of $200,000 was appropriated.  Under these provisions of law Mr. Walsh, as Superintendent of Public Works, chartered the tugs *Henry Koerber, Jr.*, and *Charlotte*, in the name and behalf of the People of the State of New York, for periods beginning May 15 and ending at latest December 15, 1919; and it was under these charters that they were being operated when the disasters occurred upon which the libels are founded and the petitions under Rule 59 are based.  The decrees sought would affect Mr. Walsh in his official capacity, and not otherwise.  They might be satisfied out of any property of the State of New York in his hands as Superintendent of Public Works, or made a basis for charges upon the treasury of the State under

§ 46 of the Canal Law (Cons. L. 1909, p. 269), which provides that the commissioners of the canal fund may allow claims for moneys paid by the Superintendent of Public Works, or other person or officer employed in the care, management, superintendence, and repair of the canals, for a judgment recovered against them or any of them in any action instituted for an act done pursuant to the provisions of the canal law. In either case their effect, whether complete or not, would expend itself upon the People of the State of New York in their public and corporate capacity. Section 47 of the Canal Law provides for an action before the Court of Claims for certain kinds of damages arising from the use or management of the canals; but in terms it is provided that this "shall not extend to claims arising from damages resulting from the navigation of the canals." There is no suggestion that the Superintendent was or is acting under color of an unconstitutional law, or otherwise than in the due course of his duty under the constitution and laws of the State of New York. In the fullest sense, therefore, the proceedings are shown by the entire record to be in their nature and effect suits brought by individuals against the State of New York, and therefore—since no consent has been given—beyond the jurisdiction of the courts of the United States.

There is no substance in the contention that this result enables the State of New York to impose its local law upon the admiralty jurisdiction, to the detriment of the characteristic symmetry and uniformity of the rules of maritime law insisted upon in *Workman* v. *New York City,* 179 U. S. 552, 557–560; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, 215; *Union Fish Co.* v. *Erickson,* 248 U. S. 308, 313; *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149, 160. The symmetry and harmony maintained in those cases consists in the uniform operation and effect of the characteristic principles and rules of the maritime law

as a body of substantive law operative alike upon all who are subject to the jurisdiction of the admiralty, and binding upon other courts as well. · *Chelentis v. Luckenbach S. S. Co.,* 247 U. S. 372, 382, 384. It is not inconsistent in principle to accord to the States, which enjoy the prerogatives of sovereignty to the extent of being exempt from litigation at the suit of individuals in all other judicial tribunals, a like exemption in the courts of admiralty and maritime jurisdiction. ·

· The want of authority in the District Court to entertain these proceedings *in personam* under Rule 59 (now 56) brought by the claimants against Mr. Walsh as Superintendent of Public Works of the State of New York is so clear, and the fact that the proceedings are in essence suits against the State without its consent is so evident, that instead of permitting them to run their slow course to final decree, with inevitably futile result, the writ of prohibition should be issued as prayed. *Ex parte Simons,* 247 U. S. 231, 239; *Ex parte Peterson,* 253 U. S. 300, 305.

*Rule absolute for a writ of prohibition.*