GREAT LAKES INTER-TRIBAL COUN-
CIL, INCORPORATED; Bad River
Band of Lake Superior Chippewa In-
dians of Wisconsin, Incorporated; Red
Cliff Band of Lake Superior Chippewa
Indians of Wisconsin, Incorporated; St.
Croix Chippewa Indians of Wisconsin;
Sokaogon Chippewa Community of Wis-
consin, Incorporated; Forest County
Potawatomi Community of Wisconsin,
Incorporated; Oneida Tribe of Indians
of Wisconsin, Incorporated; Stock-
bridge-Munsee Community of Wiscon-
sin, Incorporated, Plaintiffs,

v.

Lester P. VOIGT, individually and as
Secretary of the Department of Natural
Resources, State of Wisconsin; John
A. Beale, individually and as Adminis-
trator of the Division of Conservation,
State of Wisconsin, Department of Nat-
ural Resources; the State of Wisconsin
Natural Resources Board, Defendants.

No. 68-C-95.

United States District Court
W. D. Wisconsin.

Jan. 26, 1970.

Joseph F. Preloznik, Jonathon D.
Jackson, Jr., Thomas A. Lockyear, Madi-
son, Wis., for plaintiffs.

Carroll E. Metzner, F. Dean Lawson,
Madison, Wis., for defendants.

## ORDER

JAMES E. DOYLE, District Judge.

Plaintiffs seek to have defendants en-
joined from enforcing the fish and game
laws of the State of Wisconsin against
them or their individual members on In-
dian lands. They claim that such an ap-

plication of the fish and game laws is in conflict with provisions of several treaties executed between the plaintiffs and the United States. Plaintiffs also seek a declaratory judgment that 18 U.S.C. § 1162 (entitled "State jurisdiction over offenses committed by or against Indians in the Indian country") in no way affects existing hunting, fishing and trapping treaty rights of plaintiffs and their individual members.

Defendants' motion to dismiss for lack of jurisdiction is presently before the court. Defendants assert that: (1) this is a suit against the state to which it has not consented; (2) the plaintiffs have not exhausted their state administrative remedies; and (3) the abstention doctrine requires this court to withhold jurisdiction until such time as the state has had an opportunity to clarify the applicability of the state laws challenged here.

In their original complaint plaintiffs had invoked jurisdiction pursuant to 28 U.S.C. §§ 1343(3), 1343(4), 2201 and 2202 and 42 U.S.C. § 1983. Plaintiffs were allowed to amend their complaint to add 28 U.S.C. § 1362 as a jurisdictional basis. This section became effective October 10, 1966 (80 Stat. 880) and reads:

"§ 1362. Indian tribes

"The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States."

From the face of the amended complaint, all requirements of § 1362 are met. It is alleged that all plaintiffs are Indian tribes or bands; that all these tribes or bands are recognized by the Secretary of the Interior; and that the matter in controversy arises under the

laws and treaties of the United States. The House Report on § 1362 provides, in part:

"In its report to the Senate Committee, the Department of the Interior specifically pointed out that the issues involved in cases involving tribal lands that either are held in trust or were so held by the United States or are held by the tribe subject to restriction against alienation imposed by the United States are Federal issues. The Department therefore observed that particularly as to this class of cases it is appropriate that the actions be brought in a U. S. district court. * * * [T]he Department of the Interior indicated that a tribe's desire to have a Federal forum for matters based upon Federal questions is justified." H.R.Rep. No. 2040, 1966 U.S. Code Cong. and Admin.News, p. 3146.

Defendants contend that, for the purpose of applying the doctrine of state immunity from suit enunciated in Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), this action against the Wisconsin Natural Resources Board and two officers of the Wisconsin Department of Natural Resources must be construed as an action against the state.[1] Although the state is not named as a party, the effect of the relief sought would be not only to control the actions of a specific state agency and specific state officers, but to prevent the state itself from enforcing its fish and game laws against certain persons in certain areas. See Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

The contention is sound, of course, but it is not a sufficient answer to the underlying issue, because a major modification of the immunity doctrine has arisen from Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R. A.,N.S., 932 (1908). In Ex parte

1. Defendants speak in terms of the Eleventh Amendment, which forbids actions against a state by citizens of another state. That the establishment of the judicial power of the United States in the Constitution was not intended to abrogate the doctrine of state immunity from actions against it by its own citizens was held in Hans v. Louisiana, *supra*, at 15, 10 S.Ct. 504.

Young, the Attorney General of the State of Minnesota was named as a defendant in an action brought by citizens of Minnesota to enjoin him from instituting any proceeding to enforce a Minnesota statute which fixed rates charged by railroads. It was alleged that the statute violated the due process clause of the Fourteenth Amendment to the Constitution of the United States. Clearly, the effect of the relief sought was to prevent the State of Minnesota from giving effect to a policy enunciated by its legislature. However, it was held that the doctrine of sovereign immunity did not bar the action against the Attorney General. The Court declared, 209 U.S. at 159–160, 28 S.Ct. at 454:

> "If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."

In the present action it is contended that the application of the fish and game laws of Wisconsin to these plaintiffs on Indian lands is in conflict, not with a provision of the Constitution of the United States, but with provisions of certain treaties made under the authority of the United States.

Article VI, Clause 2, of the Constitution of the United States provides:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The question arises whether the doctrine of sovereign immunity is a bar to an action against state officials, seeking declaratory and injunctive relief, in which it is alleged that a threatened application of certain state statutes violates a provision of a treaty of the United States, rather than a provision of the Constitution of the United States.

It may be thought that in the first situation, the Constitution of the United States is directly operative; in the second, the Constitution of the United States is only indirectly operative, in that it awards supremacy to the treaty.

A similar distinction has been considered significant, even determinative, in construing 28 U.S.C. § 2281. Section 2281 requires that an application to a federal district court for an injunction against the operation of a state statute "upon the ground of the unconstitutionality [under the Constitution of the United States] of such statute" be determined by a court of three judges. After considerable uncertainty, it has been decided that § 2281 governs only when the ground is that the state statute is in conflict with a provision of the Constitution of the United States, and not when the state statute is in conflict with a valid statute of the United States; that the supremacy of the valid federal statute depends upon Article VI of the Constitution of the United States is not considered to mean that the attack upon the state statute is "upon the ground of the unconstitutionality of such statute." Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). The reasons for this construction of § 2281 were found in its structure, in earlier judicial construction, in its historical purpose, and in considerations of judicial administration. 382 U.S., at 128, 86 S.Ct. 258.

These factors are not operative in the present case. By virtue of Ex parte Young, the holding of which is long since firmly established doctrine, one may sue a state officer in a federal district court to obtain relief from the operation of a state statute which is in-

valid because it is in conflict with a provision of the Constitution of the United States. No persuasive reason suggests itself why one should not also be permitted to sue a state officer in a federal district court to obtain relief from the operation of a state statute which is invalid because it is in conflict either with a provision of a valid federal statute or with a provision of a treaty. From the language of Article VI of the Constitution of the United States, it is clear that the state statute is no less invalid in the one case than in the other. Moreover, the invalidity of the state statute in each situation springs from Article VI with equal directness. That is to say, a state statute which is in conflict with the Constitution of the United States is invalid only because Article VI provides that the Constitution of the United States is "the supreme Law of the Land"; a state statute in conflict with a valid federal statute or a treaty is invalid for the same reason; in the absence of Article VI, this result would have been no more inevitable in the one situation than in the other.

It is necessary, however, to consider the implications, for the present purpose, of the declaration that a state is not divested of its sovereign immunity on the mere ground that the action is one arising under the Constitution or laws of the United States. This proposition was repeated by the Supreme Court, perhaps most recently, in Parden v. Terminal R. Co., 377 U.S. 184, 186, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); the Court cited as authority Hans v. Louisiana, 134 U.S. 1, 10, 10 S.Ct. 504, 33 L. Ed. 842 (1890); Smith v. Reeves, 178 U.S. 436, 447–449, 20 S.Ct. 919, 44 L.Ed. 1140 (1900), Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920), and Ex parte New York, 256 U. S. 490, 497–498, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

Because of Ex parte Young, it is obvious that a state may be divested of its sovereign immunity in some actions "arising under the Constitution * * * of the United States" against a state official, even though it is clear that in purpose and effect the action is directed against the state. The question seems to be whether the statements in cases such as *Parden, Hans, Smith, Duhne,* and Ex parte New York mean that the doctrine of sovereign immunity bars every such action "arising under the * * * *laws* of the United States" (emphasis added). I conclude otherwise. *Hans* was decided long before Ex parte Young and it expressly adopted a view of sovereign immunity which was altered by Ex parte Young. *Smith* also preceded Ex parte Young, and it did not involve an allegation that a state statute was inconsistent with either the federal Constitution or a federal statute. *Duhne* was decided subsequently to Ex parte Young; it was an action in which the State of New Jersey, as distinguished from an officer or agency of the state, was named as a party defendant; and it was also an action in which the Eighteenth Amendment to the Constitution of the United States was alleged to have been invalidly adopted, and thus federal and state statutes based upon it were alleged to be invalid. Ex parte New York expressly recognized the vitality of Ex parte Young, but did not involve an allegation that a state statute was inconsistent with either the federal Constitution or a federal statute; it involved the question whether the immunity doctrine extended to the admiralty jurisdiction of the federal courts. Finally, *Parden* itself did not involve an allegation that a state statute was inconsistent with either the federal Constitution or a federal statute; it involved a question whether a railroad corporation established and owned by the State of Alabama, and engaged in interstate commerce, was amenable to suit under the Federal Employers' Liability Act; there was no question whether the Alabama statute creating the railroad

was invalid because of the federal Constitution or a federal statute.

█ I conclude that the doctrine of state immunity from suit enunciated in Hans v. Louisiana, *supra*, is not a bar to an action against an agency or officers of a state government to enjoin them from invading rights secured by treaties of the United States with which a state statute is allegedly in conflict. I conclude that jurisdiction over the present action is conferred by 28 U.S.C. § 1362.[2]

█ The remaining grounds for defendants' motion to dismiss are unpersuasive. Having concluded that state immunity is not a bar to this action, and that 28 U.S.C. § 1362 confers jurisdiction, it appears that the Congressional purpose so clearly expressed in § 1362 should be given effect. To require exhaustion of state remedies, or to abstain from the exercise of jurisdiction until the state has undertaken to clarify the applicability of its fish and games laws to plaintiffs on Indian lands, would be to dilute the Congressional intention to provide to the Indians a federal forum for just such questions as those presented here.[3]

For the reasons stated herein, and upon the basis of the entire record herein, it is hereby ordered that the defendants' motion to dismiss is denied.

---

**2.** In Quinault Tribe of Indians of Quinault Reservation in State of Washington v. Gallagher, 368 F.2d 648 (9th cir. 1966), the defendant state officials not only refrained from raising the issue of state immunity, but joined the plaintiffs in requesting that the court exercise jurisdiction under § 1362; the court proceeded to do so. Sohappy v. Smith, 302 F.Supp. 899 (D.Or.1969), involved an action by certain Indian tribes against various conservation officials of the State of Oregon for a declaratory judgment defining the Indians' treaty right to take fish at all usual and accustomed places and defining the manner and extent of the state's power to regulate Indian fishing. Without comment beyond citing Ex parte Young and Georgia Railroad and Banking Co. v. Redwine, 342 U.S. 299, 72

S.Ct. 321, 96 L.Ed. 335 (1952), the court held that the action was "not barred by the Eleventh Amendment of the United States Constitution." 302 F.Supp., at 904.

**3.** I am fortified in this view by the fact that exhaustion of state remedies is not required in cases arising under 42 U.S.C. § 1983. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). It appears that Indian tribes should enjoy access to the federal courts when seeking to vindicate rights allegedly theirs under treaties with the United States no less restricted than the access accorded to those who seek to vindicate civil rights allegedly theirs under the Constitution or laws of the United States.