**STANDING ROCK SIOUX INDIAN TRIBE, Appellee,**

v.

**Byron L. DORGAN, Tax Commissioner, State of North Dakota, Appellant.**

**No. 74–1119.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1974.

Decided Nov. 1, 1974.

Marvin J. Sonosky, Washington, D. C., for appellant.

Albert R. Hausauer, Sp. Asst. Atty. Gen., Bismarck, N. D., for appellee.

Before GIBSON, Chief Judge, WEBSTER, Circuit Judge, and Williams*, District Judge.

WEBSTER, Circuit Judge.

This appeal presents for our consideration the jurisdiction of a federal court to entertain an action brought by an Indian tribe to recover state sales and use taxes illegally collected from its members by the Tax Commissioner of North Dakota.[1] The District Court[2] dismissed

---

\* The Honorable Paul X Williams, United States District Judge, Western District of Arkansas, sitting by designation.

1. The complaint also prayed for interest, attorneys' fees and other appropriate relief.

2. Honorable Bruce M. VanSickle, United States District Judge, District of North Dakota.

the action for want of subject matter jurisdiction. Holding this action to be barred by the Eleventh Amendment to the Constitution of the United States, we affirm the judgment of the District Court.

In 1973 the Supreme Court of North Dakota declared that the action of tax officials in collecting sales and use taxes from Indians on tribal reservations contravened the Constitution, laws and treaties of the United States. White Eagle v. Dorgan, 209 N.W.2d 621 (N.D.1973). The Standing Rock Sioux Indian Tribe promptly filed its complaint in federal court against the state tax commissioner, seeking to recover all sums illegally collected from its members. It is from the dismissal of this action that the Tribe appeals.[3]

In this case the Tribe has sued as *parens patriae* to collect monetary damages on behalf of its members, at least some of whom are potential claimants for tax refunds under the reimbursement program established by the state.[4] In its complaint, the Tribe has claimed injury to itself, asserting that its sovereignty has been diminished by the illegal taxation, as well as injury to its members, in that at least some of them were compelled to pay taxes unlawfully assessed by the state. *Cf.* McClanahan v. Arizona State Tax Commissioner, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973). Jurisdiction of the District Court is predicated upon 28 U.S.C. § 1362 [5] and 28 U.S.C. § 1343(3).[6] However, we must first consider such asserted jurisdiction in the light of appellee's claim of sovereign immunity under the Eleventh Amendment to the Constitution of the United States, for, where properly invoked, the Eleventh Amendment bars the action regardless

3. That the collection of the taxes was illegal is not contested. Moreover, appellant concedes that a procedure has been established by the state wherein any aggrieved individual taxpayer may submit and process his claim against the state.

"Guidelines" published by Tax Commissioner Dorgan's office provide in part as follows:

Refunds for sales and use tax must be made pursuant to the provisions of Chapter 57–39.2 and Chapter 57–40.2 of the North Dakota Century Code.

An Indian customer who has paid sales and use tax and who is now entitled to a refund may file a refund claim for such sales and use tax directly with the State Tax Commissioner accompanied by proper proof and thus receive the cash refund directly. In this way no claim need be filed with or through the retailer. Refund claims must be filed within three years of the date on which the tax was paid; however, claims for refunds for years beyond the three year limitation will be given a hearing by the Tax Commissioner and, if denied, can be appealed to the Court.

The type of proof required will vary depending upon the factual situation of each case but generally must consist of and include such documentation as: copies of sales tickets or their equivalent showing the amount of sales or use tax paid, the date of payment, identity of retailer to whom it was paid, and the identity of the customer; or a statement from the retailer to the effect that the tax was received from the customer and remitted to the State Tax Commissioner along with the amount of tax involved, dates of payment, and identity of the customer.

The Tribe's complaint challenged the conditions imposed by these Guidelines as "impossible to fulfill * * *."

4. There is no allegation of any payment of the unlawfully imposed taxes by the Tribe itself, and the Tribe has presented no plan to return the refunds to any individual taxpayer should it prevail in this action.

5. 28 U.S.C. § 1362 provides:
The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

6. 28 U.S.C. § 1343 provides in part:
The district court shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
    *     *     *     *     *
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.
    *     *     *     *     *

of the statutory basis of jurisdiction. O'Neill v. Pennsylvania, 459 F.2d 1 (3d Cir. 1972).

## I

■ The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[7]

While it is not clear whether the court below considered the Eleventh Amendment in its dismissal of the action, we note that under the recent decision of the United States Supreme Court in Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974), "the Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court" in order to be properly presented to the Court of Appeals. 415 U.S. at 678, 94 S.Ct. at 1363. *See also* Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 466–467, 65 S. Ct. 347, 89 L.Ed. 389 (1945).

■ The doctrine of sovereign immunity as embodied in the Eleventh Amendment has been liberally construed to achieve its intended purpose. Thus, an unconsenting state is immune from suit in federal court by its own citizens, a situation not expressly covered therein. Edelman v. Jordan, *supra*; Employees v. Department of Public Health and Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Parden v. Terminal Railway Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In addition, the Amendment has been construed to preclude federal jurisdiction in a suit against a state brought by a foreign government. Monaco v. Mississippi, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1497 (1934). Finally, the Amendment may be invoked by the state where it is not a named party but is the real party in interest in an action for the recovery of money against a state official or agency. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Edelman v. Jordan, *supra*; Ford Motor Co. v. Department of Treasury, *supra*; Ex parte New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

■ The suit in this case is by the Standing Rock Sioux Tribe against the North Dakota Tax Commissioner. It is strictly a suit for money damages. The complaint alleges an abuse of lawful authority by the Commissioner in refusing to make tax refunds to reservation Indians from whom taxes were collected unlawfully as a matter of federal law. The complaint, however, does not seek to impose personal liability upon the Commissioner, and counsel has conceded in oral argument that the funds would come from the state treasury. Contrast Scheuer v. Rhodes, *supra*, where the claim alleged an abuse of lawful authority and sought personal liability. If this suit is in fact a suit against the state to recover a refund of taxes upon the ground that the tax was illegal under federal law, then federal courts are without power to entertain it without the consent of the state. Edelman v. Jordan, *supra*; Ford Motor Co. v. Department of Treasury, *supra*; Great Northern Life Insurance Co. v. Read, *supra; see* Anderson v. Graham, 492 F.2d 986 (8th Cir. 1973); Like v. Carter, 486 F.2d 552 (8th Cir. 1973). Such consent to be sued in federal court is not alleged in the complaint nor may it be inferred from procedures established by North Dakota for the reimbursement of individual taxpayers.[8] *See* Great Northern

---

7. As explained *infra*, the Amendment has been held applicable to suits in federal court against a state brought by a citizen thereof.

8. *See* note 3 *supra.*

Life Insurance Co. v. Read, *supra*, 322 U.S. at 53–54, 64 S.Ct. 873.

## II

In attempted avoidance of the effect of the Eleventh Amendment, the Tribe argues (1) that the suit is not in fact against the state and (2) that as an Indian tribe its claim lies outside the reach of the Eleventh Amendment. We reject both contentions.

### The Real Defendant

■ The Tribe contends that the Amendment has no application here because the funds sought to be recovered are available to the Tax Commissioner under the constitution and laws of North Dakota without resort to an intrusion into the state treasury. We disagree. The constitution and the statutory scheme of North Dakota do permit the tax collector to pay refunds to taxpayers without individual authorization from the legislature. *See* N.D.Const. § 186(1); N.D.C.C. § 57–01–12; § 57–39.-2–25 (1972). The Tribe, however, has paid no taxes and therefore is not entitled to receive monies from those funds unless deemed an appropriate party by a court of competent jurisdiction. Whether they should be paid to the Tribe is a question on the merits and cannot be reached unless jurisdiction is first established.[9] And jurisdiction is precluded here because no matter whether judgment is obtained against the Tax Commissioner in his official capacity or against the state, the funds are to come from the state treasury.

### The Status of Indian Tribes

We turn now to the Tribe's contention that 28 U.S.C. § 1362 [10] authorizes Indian tribes to sue in federal court whenever the United States could sue, and since the Eleventh Amendment does not bar suits by the United States, the Tribe likewise cannot be barred.

Prior to the enactment of 28 U.S.C. § 1362 in 1966, considerable uncertainty existed regarding the capacity of a tribe to sue or be sued in the absence of a specific statute conferring such capacity. *See* United States Department of Interior, Federal Indian Law 490–91 (1972). In United States v. Minnesota, 270 U.S. 181, 46 S.Ct. 298, 70 L.Ed. 539 (1926), the Supreme Court recognized the right of the United States to sue the State of Minnesota on behalf of an Indian tribe in the Supreme Court for the return of lands or monetary proceeds allegedly taken in violation of the treaties between the United States and the Indians. Commenting on the fact that the United States, which had a direct interest in the case, had sued where the Indians could not have done so, the Court observed:

> The reason the Indians could not bring the suits suggested lies in the general immunity of the State and the United States from suit in the absence of consent. Of course, the immunity of the State is subject to the constitu-

---

9. Arguably, the question whether the reimbursements should be paid to the Tribe is a question of standing, *i. e.*, whether the Tribe has alleged sufficient injury on behalf of its members to bring this action to collect refunds for the taxes which these individual taxpayers were unlawfully compelled to pay. *Cf.* Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). We have recognized that in appropriate cases an organization may have standing to vindicate the constitutional rights of its members.

NAACP v. Button, 371 U.S. 415, 428, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963); Smith v. Board of Educ. of Morrilton, 365 F.2d 770 (8th Cir. 1966). In any event, although standing to sue is a threshold question, *see* Adolphus v. Zebelman, 486 F.2d 1323 (8th Cir. 1973), as is sovereign immunity, it is unnecessary for us to reach the former because of our disposition of the case on the latter ground.

10. *See* note 5 *supra*.

tional qualification that she may be sued in this Court by the United States, a sister State, or a foreign State. * * * Otherwise her immunity is like that of the United States. But * * * the fact that [the Indians] could not sue the State [does not] show that the United States is without right to sue her for their benefit.

270 U.S. at 195, 46 S.Ct. at 301.

When Congress enacted 28 U.S.C. § 1362 in 1966, it intended to authorize Indian tribes to bring suits in federal court to protect their federally derived property rights in those situations where the United States has declined to act in their behalf. Fort Mojave Tribe v. LaFollette, 478 F.2d 1016 (9th Cir. 1973); *see* Salt River Pima-Maricopa Indian Community v. Arizona Sand and Rock Co., 353 F.Supp. 1098 (D.Ariz.1972). Thus, "one of the purposes of the legislation was to permit the Tribes to initiate litigation involving issues which could have been instituted by the United States as trustee." Moses v. Kinnear, 490 F.2d 21, 25 n.9 (9th Cir. 1974); Confederated Salish and Kootenai Tribes v. Moe, Civil No. 2145 (D. Mont., Oct. 11, 1973) slip opinion at 6.[11]

The complaint lacks any allegation, however, which would have made the United States the real party in interest even if the United States had brought the action as Trustee prior to the enactment of § 1362. The state no longer taxes Indians contrary to law. The United States has no direct interest in monies illegally collected from the Indians. In a case in which the United States has no direct interest, § 1362 cannot elevate the Tribe to a position equivalent to that of the United States. The Tribe, therefore, cannot pierce the shield of sovereign immunity with an illusory sword. Moreover, since there is nothing in 28 U.S.C. § 1362 to suggest that the United States intended to waive its own sovereign immunity by this enactment, Scholder v. United States, 428 F.2d 1123, 1125 (9th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970), there is certainly no basis for inferring that this statute abrogated the sovereign immunity of the several states.

A second argument that the Tribe is not a citizen of any state and is therefore outside the reach of the Eleventh Amendment leads us first to the "stateless person" cases which hold that where a party is unable to establish that he is either a citizen of a state or a citizen or subject of a foreign state, no diversity jurisdiction exists in federal court. Shoemaker v. Malaxa, 241 F.2d 129 (2d Cir. 1957); Factor v. Pennington Press, Inc., 238 F.Supp. 630 (N.D. Ill.1964); Reyes v. Penoci, 202 F.Supp. 436 (D.P.R.1962); Pemberton v. Colonna, 189 F.Supp. 430 (E.D.Pa.1960), aff'd per curiam, 290 F.2d 220 (3d Cir. 1961); Blair Holdings Corp. v. Rubenstein, 133 F.Supp. 496 (S.D.N.Y.1955). Indeed, it is clear that an Indian tribe is not a citizen of any state and cannot sue or be sued in federal court under diversity jurisdiction, Federal Indian Law, *supra*, at 341; *see* Oneida Indian Nation v. County of Oneida, 464 F.2d 916 (2d Cir. 1972), rev'd on other grounds, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

---

11. Another purpose of the statute was to eliminate the jurisdictional amount requirement of 28 U.S.C. § 1331 for a particular class of suits, namely federal—question actions brought by an Indian tribe or band. Scholder v. United States, 428 F.2d 1123 (9th Cir.), cert. denied, 400 U.S. 942, 91 S. Ct. 240, 27 L.Ed.2d 246 (1970); Quinault Tribe of Indians v. Gallagher, 368 F.2d 648, 655–656 (9th Cir. 1966), cert. denied, 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967); H.R.Rep.No.2040, 89th Cong., 2d Sess., 1966 U.S.Code Cong. & Admin.News, at pp., 3145, 3146; *see* Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

But the reasoning in those would-be diversity cases is not controlling in Eleventh Amendment cases, where different policy considerations come into play. In Blair Holdings Corp. v. Rubenstein, *supra*, the court rejected the plaintiff's contention that a logical extension of the rule that "stateless persons" are not subject to diversity jurisdiction would require a construction of the Eleventh Amendment permitting "stateless persons" to sue a state in federal court. The court said:

> [Plaintiff's] contention fails to recognize the difference between sovereign immunity and jurisdiction founded on diversity. A literal construction of the Eleventh Amendment would have done violence to the fundamental concept that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent' and that this 'exemption, as one of the attributes of sovereignty, is now enjoyed by the government of every state in the Union.' Hans v. State of Louisiana, supra, 134 U.S. at page 13, 10 S.Ct. at page 506.

133 F.Supp. at 502 (footnote omitted).

We think this analysis is fully consistent with the liberal interpretation traditionally afforded the Eleventh Amendment.

## III

In conclusion, we hold that the Eleventh Amendment bars this suit for money damages,[12] and that neither 28 U.S.C. § 1362 nor the plaintiff-Tribe's similarity to a "stateless person" exempts it from this jurisdictional bar.

12. We are not concerned, therefore, with the substantial number of cases which have permitted suits for injunctive or declaratory relief against state officials in their official capacity. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Edelman v. Jordan, *supra*, 415 U.S. 1347, 94 S.Ct. 1347; Rothstein v. Wyman, 467 F.2d 226, 236–237 (2d Cir. 1972), cert. denied, 411 U. S. 921, 94 S.Ct. 1552, 36 L.Ed.2d 315 (1973). Moreover, we recognize that there is some authority for the proposition that the Eleventh Amendment would not bar a tribe from suing a state official where the remedy sought is injunctive or declaratory relief rather than monetary damages. *See* Great Lakes Inter-Tribal Council, Inc. v. Voigt, 309 F.Supp. 60 (W.D.Wis.1970); *cf.* Sohappy v. Smith, 302 F.Supp. 899 (D. Ore.1969).