**Lawren V. SCHUMAKER, Plaintiff,**

**v.**

**Maynard SOMMER et al., Defendants,**

State of South Dakota, Acting by and through the Department of Transportation for the Division of Highways, Applicant for Intervention.

**Darlene SCHUMAKER, Plaintiff,**

**v.**

**Maynard SOMMER et al., Defendants,**

State of South Dakota, Acting by and through the Department of Transportation for the Division of Highways, Applicant for Intervention.

**Civ. No. 73–3032 and 73–3033.**

United States District Court,
D. South Dakota,
Central Division.

Dec. 16, 1974.

Charles Poches, Jr., Fort Pierre, S. D., and James A. Dumas, Los Angeles, Cal., appeared in behalf of the plaintiffs.

R. C. Riter, Stephens, Riter, Mayer & Hofer, and Warren W. May, Martens, Goldsmith, May, Porter & Adam, Pierre, S. D., appeared in behalf of the defendants.

Carl W. Quist and Camron Hoseck, Asst. Attys. Gen., Pierre, S. D., appeared in behalf of the State of South Dakota.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Both of these diversity cases arise from the same event. In August of 1972, the plaintiff in CIV 73-3033, Darlene Schumaker, was driving a 1972 Dodge van north on South Dakota highway No. 83, approximately nine miles south of Mission, South Dakota. Her husband, Lawren V. Schumaker, plaintiff in CIV 73-3032, was a passenger in the van. Mr. Schumaker in his suit seeks damages for loss of consortium and property loss, while Mrs. Schumaker seeks damages in her suit for personal injuries she sustained, all as a result of a vehicular accident. The Schumakers, citizens of California, allege in their complaints that Mrs. Schumaker lost control of the van, which rolled, as a result of the negligence of the defendants.

The defendants are all citizens of South Dakota, and at the time of the accident at issue were all employees of the South Dakota State Highway Department.[1] The complaint alleges that each of the defendants was negligent in performing their respective responsibilities with regard to the construction, maintenance and improvement of the highway at the location of the accident, and that their negligence caused the accident and the attendant damages suffered by the plaintiffs. Specifically, it is alleged that the defendants had the duty to construct, maintain and improve the highway so as to provide a reasonably safe condition for travel, and that they knew, or with the exercise of reasonable care should have known, that the highway was dangerous to the traveling

---

1. At the time of the accident, defendant Sommer was acting State Highway Engineer, defendant Cable was State Maintenance Engineer, defendant Greek was District Engineer, defendant Thompson was District Maintenance Engineer, defendant McKee was Maintenance Superintendent, and defendant Brei was foreman of the maintenance crew.

public. The highway is alleged to have been defective in that at the location of the accident the road, which curves and inclines, is not constructed within the accepted requirements for safe highway travel, and that there is a five inch perpendicular drop from the roadway surface to the adjacent gravel, and that the edge of the roadway is not marked so as to indicate and warn the public of a drop-off at the edge of the pavement and the lack of an adjacent shoulder, and that the center line was painted so as to narrow the lane in which plaintiffs were traveling.

The State of South Dakota was not made a defendant by the plaintiffs. The State has, however, filed a motion to intervene and a motion to dismiss the complaints. The legal issue raised by the State and by the named individual defendants in their answer, is whether a personal injury suit for damages founded on alleged personal and individual negligence in the construction, maintenance and improvement of a highway, against individual employees of the State Highway Department, is in reality a suit against the State.[2] If the question raised is answered affirmatively, it would follow that this court lacks jurisdiction by virtue of the Eleventh Amendment to the United States Constitution.

■■ The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

At one time it was the rule that the amendment applied only in cases in which one of the United States was a named party. Osborn v. United States Bank, 22 U.S. (9 Wheat.) 738, 857, 6 L. Ed. 204 (1824). However, at this date it is clear that the Eleventh Amendment's jurisdictional bar may be raised where the state "is not a named party but is the real party in interest in an action for the recovery of money against a state official or agency." Standing Rock Sioux Indian Tribe v. Dorgan, 505 F.2d 1135 at p. 1138 No. 74–1119 (8th Cir., November 1, 1974); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). "Its applicability 'is to be determined not by the mere names of the titular parties but by the essential nature and effect of the proceeding, as it appears from the entire record.' Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921)." Scheuer v. Rhodes, 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The complaints in the instant cases allege personal negligence on the part of the named defendant state officials or employees. The state is not named as a party defendant, nor does the complaint by its terms seek to impose any liability or obligation upon the state. The state argues, nonetheless, that the "essential nature and effect of the proceeding" makes these cases ones in which the state is the real defendant.

In Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the

---

2. Procedurally it may have been more appropriate for the named individual defendants to raise this question by motion. Technically, the only motion before the court is to intervene. If that were granted, then the State's motion to dismiss would be before the court. However, since the Eleventh Amendment question goes to the subject matter jurisdiction of this court, and partakes sufficiently of a jurisdictional bar, and because the issue was raised in the defendants' answers, it is appropriate that this court reach the merits of the Eleventh Amendment issue, without regard to the intervention question. Edelman v. Jordan, 415 U.S. 651, 677–678, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974). As is made clear by the wording of the State's motion, intervention is sought only for the purpose of raising the Eleventh Amendment.

Supreme Court held that the District Court erred in dismissing, on Eleventh Amendment grounds, cases brought by the personal representatives of students killed during the Kent State riot. The defendants named in the complaints were the Governor, Adjutant-General, and assistant Adjutant-General, of Ohio, as well as various named and unnamed officers and enlisted men of the Ohio National Guard, and the Kent State University President. The District Court had held that the cases were in essence against the State of Ohio, and thus barred by the Eleventh Amendment. The Court of Appeals affirmed the decision of the District Court, on the same ground and on the alternative ground that executive immunity barred the actions as against the state officials. 471 F.2d 430 (6th Cir. 1972).

The Supreme Court reversed and remanded. The Court recognized that the Eleventh Amendment is a bar to federal jurisdiction in a suit which seeks monetary damages from the state treasury. 416 U.S. at 238, 94 S.Ct. 1683. Edelman v. Jordan, *supra*. The *Scheuer* Court held that when a complaint seeks to impose personal and individual liability, the Eleventh Amendment does not bar federal jurisdiction. 416 U.S. at 238, 94 S.Ct. 1683.

In Edelman v. Jordan, *supra*, the Supreme Court reversed that portion of the District Court decree which awarded *retroactive* welfare benefits to the plaintiffs. In ascertaining whether a particular suit is one against the State, the Court focused attention on the question of whether the judgment would expend itself on the state treasury. In *Edelman* it was clear that the District Court's judgment would do precisely that. The Court reached its holding despite the fact that only individual welfare officials were named defendants, holding that the inevitable effect of the judgment in the lower court would be the depletion of state revenues. 415 U.S. at 668, 94 S.Ct. 1347. It was not contemplated in the suit that the retroactive award would be paid by the individual officials.

While the Court of Appeals described this retroactive award of monetary relief as a form of "equitable restitution," it is in practical effect indistinguishable in many aspects from an award of damages against the State. It will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were defendants in the action. It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials. 415 U.S. at 668, 94 S.Ct. at 1358.

The Court in Standing Rock Sioux Indian Tribe v. Dorgan, 505 F.2d 1135, No. 74–1119 (8th Cir., November 1, 1974), affirmed the lower court's dismissal of an action to recover sales and use taxes illegally collected by North Dakota. In *Standing Rock Sioux Indian Tribe,* as in *Edelman,* the Court placed emphasis on the fact that the relief sought would be paid from the state treasury. In *Standing Rock Sioux Indian Tribe,* again as in *Edelman,* the complaint did not seek to impose personal liability upon the individual defendant. Scheuer, *supra,* may be distinguished from both *Standing Rock Sioux Indian Tribe* and *Edelman* on the basis that in *Scheuer* the complaint did seek to impose personal liability upon the individual defendants.

 Construing the complaints in these cases before the court most favorably to the pleader, *see, e. g.,* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), it appears that the plaintiffs are seeking to impose personal liability on the named individual defendants for their alleged personal negligence, and are not seeking money damages from the State of South Dakota. It is the opinion of this Court that these cases are not against the State, within the meaning of the cases discussed *infra,* and accordingly holds that

the motions to intervene and to dismiss should be denied.[3] The Court does not separately discuss at length the merits of the motion to intervene, based on the Court's view that intervention had been sought solely for the purpose of raising the Eleventh Amendment issue. Having held that these cases are not against the State, and having recognized that no damage judgment in these cases could run against the State in any event, it is clear to this Court, that the motion to intervene should be denied. Further, while it is true that the State has claimed an interest in the subject of this lawsuit, as required by Rule 24(a)(2) of the Federal Rules of Civil Procedure, it is not at all clear that the State has satisfied the other criteria specified in that rule. The Court's disposition of the Eleventh Amendment question casts doubt on the existence of the interest claimed by the State, which of course casts doubt on the viability of the State's claim that it is so situated that the disposition of this action may impair or impede the State's ability to protect its interest. In addition, it appears to the Court that the interest of the State, assuming for the moment that the State has an interest within the meaning of Rule 24(a)(2), is adequately represented by the present party defendants. The present defendants surely have just as much interest in avoiding liability in this suit as the State would have were the State a party.

Counsel for the plaintiffs will prepare an order denying the motion to intervene and the motion to dismiss.

3. The Court is of course aware that the briefs submitted by the parties in these cases discussed at some length the doctrine of governmental immunity for government officials and employees, as well as possible waiver of that immunity. However, this Court is convinced that the Eleventh Amendment question which was the issue raised by the motion to dismiss, is a question different than that involved in governmental immunity for employees. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974), discussed in the body of this opinion, clearly delineates the two issues. Whether a particular employee or official should be entitled to immunity turns on the factual nuances peculiar to that individual within the context of the particular conduct and event drawn into question. Such a determination may be ripe on a motion for summary judgment, after appropriate affidavits or depositions are available, or may only be determinable at the trial on the merits. Clearly, a determination requiring close scrutiny of factual details is not appropriately decided on a motion to dismiss.