Joseph M. CROCKER et al.

v.

Michael PADNOS et al.

Civ. A. No. 76–437–(F)MC.

United States District Court,
D. Massachusetts.

Jan. 24, 1980.

Albert E. Grady, Brockton, Mass., for plaintiffs.

John J. O'Brien, Charles O'Malley, Boston, Mass., Asst. U. S. Atty. Carolyn S. Grace, Boston, Mass., for defendants Padnos, Crosby, City of Brockton and Brockton Transit Authority.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This action came on to be heard on a "Renewed Motion to Dismiss," or in the alternative for summary judgment.

The plaintiffs are Joseph M.. Crocker (Crocker) of Brockton, Massachusetts, Crocker Transit Systems, Inc. (Crocker Transit), a Massachusetts corporation with a place of business in Brockton, and Crocker Transportation Service, Inc. (Crocker Transportation), another Massachusetts corporation having a place of business in Brockton.

These plaintiffs allege (in a total of nine counts) entitlement to declaratory relief and monetary damages. Relief is sought against the City of Brockton, its Mayor David Crosby (as of the period of time critical hereto), one Gerald Long (Long), alleged to be an agent for the city, one Dana Alden (Alden), likewise described as an agent for the city, the Brockton Transit Authority (known as "BAT") which was formed under the provisions of Chapter 161B of the Massachusetts General Laws in late 1974, one Michael Padnos (Padnos), alleged to be Administrator of BAT, the Amalgamated Transit Union (Union), an international union of bus drivers with a place of business in Brockton, the Department of Transportation of the United States (DOT), the Secretary of DOT, William T. Coleman, Jr. (Secretary), and the Urban Mass. Transportation Administration, described as "a part of DOT" (UMTA), with a place of business in Boston.

The complaint contains the following factual allegations. In 1973 the Eastern Massachusetts Bus Company, transit provider for the City of Brockton, was struck by its union membership, and the City was without bus transportation for a period of months. In September of 1973 the City contracted with Crocker Transportation. Previously, the City had taken over the assets and franchise of the former Union Street Railway System under lease (desig-

nated as Eastern Mass. in paragraph 2 of Count 1 of the complaint), and under the terms of the September 1978 contract Crocker Transportation was to operate the bus system, receiving monthly subsidies from the City. In July of 1974 the contract between the City and Crocker Transportation was renewed (Count I, paragraph 12). A "Note of Argument," provided by one of the defendants when the motion to dismiss was initially submitted, recites that, during the years 1972 to 1974, bus ridership had declined from 750,000 riders to 500,000 riders, but the court, in dealing with this renewed motion to dismiss, does not take this alleged decline in ridership into account, preferring to consider strictly what is contained within the four corners of the complaint.

For the purposes of obtaining subsidies, the City, under Chapter 1141 of the 1973 Acts of the Massachusetts Legislature, formed BAT in September of 1974. Crocker Transportation in turn founded Crocker Transit—in December of 1974. Thereafter, (according to paragraph 17 of Count 1) Crocker individually "without consideration to himself or any of his entities" ceased his(?) contract with the City, and a new contract was entered into between BAT and Crocker. I note parenthetically that Crocker himself is not a party to the agreement, but that Crocker Transit Systems, Inc. is a party. This contract was to run through June 30, 1975. In the Spring of 1975, defendant Padnos became the Administrator of the BAT program, with an office in Brockton City Hall. Bids on a new contract, which was to take effect July 1, 1975, were submitted during the months of March, April and May. It is alleged (Count 1, paragraph 30): that the Union conspired with BAT to have BAT award the new contract to a person or entity other than Crocker and his entities, although Crocker Transit Systems, Inc. was the lowest bidder; and (in paragraph 33) that the award was the "result of conspiratorial acts or combinations between the Union, Padnos, Stephenson (the Assistant City Planner) and BAT." Plaintiffs further assert that BAT "well knew that Crocker's commit-

ments from lending institutions would run out so that Crocker would be forced to withdraw his bid." Crocker did withdraw his bid by a letter to BAT dated May 14, 1975, and according to paragraph 39 of Count I of the complaint, BAT awarded the new entity further routes within the City of Brockton.

I note here, for purposes of clarity, that, since Crocker withdrew his bid, he could not very well be the lowest bidder for the new contracts.

Plaintiffs also complain of damage to their alleged right to provide services to the City in the transportation of pupils to and from schools. According to the complaint, Crocker Transportation had a three-year contract with the school department which began July 24, 1973. Although the claim is somewhat vague, Count I, paragraph 53 alleges that a conspiracy existed between the Assistant Superintendent of Schools, the Acting Superintendent of Schools, Padnos and BAT to have so-called BAT buses also transport pupils of the Brockton School System. Crocker and his entities claim that, as a result, a portion of what had been an exclusive transportation right was taken away from him as an element of damage. It is asserted that Crocker Transportation System had been forced to purchase three new vehicles to transport children; that a direct consequence of the conspiracy was that these buses were no longer needed; and that plaintiffs suffered loss as a result.

The complaint continues with the allegations to the effect that BAT and the City have engaged in trade and commerce within the City of Brockton by providing transportation facilities and systems; that defendants Padnos, the Mayor and BAT took action to provide BAT with federal assistance; and that federal monies were received, but were utilized to swallow up transit services previously provided by private enterprise. (See paragraph 72.) Additionally, it is claimed that the activities "are part of, and contribute to, the flow in interstate commerce of products and service," and that the aforestated actions of the defendants impose "an unlawful and unrea-

sonable restraint on the alienability of the plaintiffs' business" in violation "of the Federal Antitrust laws." (See paragraph 75.)

On this so-called Federal Antitrust claim set forth in the first count of the complaint, $500,000 in damages is sought as against all defendants except the Secretary of DOT, DOT and UMTA.

The complaint does not indicate any particular provision or provisions of the antitrust laws or of the Urban Mass Transportation Act of 1964 as amended (Title 49 U.S.C. §§ 1601 et seq.) which have been violated. This complicates the task of one seeking to determine whether Count I sets forth a claim on which relief may be granted as to any or all of the named defendants. The federal entities, whether designated as Secretary, department or administration, are not parties to this count. The named defendants, having been sued in their official capacities without personal involvement, are officers of the United States; hence I treat whatever claim might be made against them as suits against the United States itself. *Ex parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1920).

■ The antitrust count, as it is directed to conduct engaged in as an act of government by the State as sovereign, or by its subdivisions, pursuant to state policy, must be dismissed. Such conduct is exempt from the federal antitrust laws. *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978). In that case the Supreme Court stated that ". . . an adequate state mandate for anti-competitive activity of cities and other subordinate governmental units exists when it is found 'from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of.'" Plaintiffs, then, have not stated a claim on which relief can be granted as against the City of Brockton, or its Mayor, the Brockton Transit Authority (a state governmental body), and Padnos (its Administrator). These entities and persons

were acting pursuant to a state policy to displace competition, and are exempt from the antitrust laws. BAT was formed under Mass. General Laws, Ch. 161B. The position of Administrator was created under the same statute. And the entities and persons were directed by Chapter 161B, § 22 to secure available federal assistance. The authority was created as a body politic, a subdivision of the Commonwealth. The motion to dismiss Count I is granted in favor of all the defendants against whom it was directed.

I have not overlooked the allegations directed against the defendants Long and Alden. The claim as against these defendants is dressed as a combination between them, Padnos and BAT to have a portion of the so-called "In-service Program" taken from Crocker Transportation. At its best, it spells out cooperation between these defendants and governmental entities exempt from federal antitrust laws.

Count II of the complaint is described as being a "pendent claim under Chapter 93A," and is said to arise out of the same "nucleus of operative fact" upon which the claim for relief in Count I is based. All plaintiffs and all defendants are the parties and litigants to this count.

Plaintiffs claim to be entitled to relief under Mass. General Laws, Ch. 93A, §§ 9 & 11; that they have sent a demand letter (the only one claimed to be required) under Mass. General Laws, Ch. 93A, § 9(3) without receiving any tender of settlement.

The alleged claim is not spelled out in any greater detail, and plaintiffs say that they are entitled to recover a half-million dollars, plus two-to-three times the damages sustained, with attorneys fees and costs.

■ As with Count I the motion to dismiss Count II must be allowed. Suit against the United States and its officers cannot be maintained without its consent. If the claims, based allegedly upon federal law, must be dismissed, then the claim under Count II, being described as "pendent" and arising out of a state statute, should be dismissed as well. *United Mine Workers v.*

*Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Despite its caption, one might attempt to characterize the plaintiffs' claim as alleging a tortious interference with contract rights. Liability of the United States in tort is determined by the provisions of the Federal Tort Claims Act, and an action such as this is barred under that statute. *See* Title 28, U.S.C. §§ 2672 *et seq.* This may constitute indulging in speculation in favor of the plaintiffs since there is not even an allegation in the complaint of the presentation of a tort claim to any appropriate federal agency, and disposition by such agency. I discuss this possible interpretation of Count II simply by way of exhaustion of the possibilities of a statement which might entitle plaintiffs to some form of relief.

■ Count III of the complaint, which plaintiffs describe as seeking general or actual damages for "libel, slander and defamation," begins with paragraph 85 of the complaint. The defendants are Padnos, BAT, the Mayor and the City, and the relief sought is in the amount of $50,000. The substance of this claim is a contention that the four named defendants made "knowingly false statements to the news media concerning the quality of service the plaintiffs had provided to the city and its residents." Plaintiffs say that, in August of 1975, the Mayor, promoting his reelection, inserted political advertisements in a Brockton newspaper implying inferiority in the plaintiffs' bus service as compared to BAT's service. Count IV is similar to III, in that defamation is alleged. Punitive damages are sought, based upon the allegations in paragraphs 85 to 104, inclusive, but adding the contention that the defamation was accomplished with actual malice. The plaintiffs demand $35,000 on this count.

Lacking an independent basis for federal jurisdiction, Counts III and IV must fall.

■ Count V attempts to set forth a cause of action under Title 42, U.S.C. § 1983, with jurisdiction allegedly conferred by Title 28, U.S.C. § 1343. Herein, Crocker Transportation charges that the transportation officer of the School Department and the City of Brockton are liable for a violation of the Fourteenth Amendment rights of the plaintiffs by adoption of the so-called "In-service Program." Plaintiffs say that Alden acted under the color of the authority of the School Committee of the City, and therefore, under color of authority of state law in terminating a phase of the transportation of the pupils in the City of Brockton by the plaintiffs. It is claimed that this was action beyond the authority of the transportation office of the school department, and a "knowing, voluntary and intentional deprivation of the plaintiffs' property." $40,000 is demanded by way of damages, both punitive and exemplary, in addition to actual compensatory damages, thus making a total claim of $90,000 on Count V. The allegations made against the City of Brockton are insufficient to make out a prima facie statement of liability against a municipality. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), stands for the proposition that municipalities may not be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. There must be a basis for the contention that the local governing body adopted a policy or custom abridging one's civil rights. There are no allegations to this effect; nor, in the opinion of the court, would any such allegations square with the remainder of the contentions in the complaint. As this count is directed against the City of Brockton, it must therefore be dismissed. I am not, however, satisfied that I should dismiss the count of the complaint as it is directed to the defendant Alden. An order will enter, therefore, denying the motion to dismiss Count V as it is directed to Alden, in his capacity as transportation officer of the School Department of the City of Brockton.

■ Count VI alleges that the defendant Union tortiously interfered with a business relationship between Crocker Transit and BAT, and $250,000-damages are demanded of the Union. Plaintiffs concede that the jurisdiction of this court is pendent upon the so-called antitrust clause and civil

rights causes. This claim could not be pendent upon the alleged civil rights cause of action against the defendant Alden, and thus I have determined that the antitrust count must be dismissed. This count, therefore, also will be dismissed as it lacks an independent basis for federal jurisdiction.

The same results must be reached on Count VII, wherein the defendants Padnos, Alden, Long and BAT are charged with tortious interference with the business relationship existing between Crocker Transportation and the School Committee of the City of Brockton or School Department of the City. This claim likewise lacks an independent basis for federal jurisdiction; plaintiffs having called upon the "pendent jurisdiction" of the court.

■ Count VIII, one for "money had and received," in which BAT and the City of Brockton are the party defendants, must also be dismissed; once again for the reason that there is no independent federal jurisdiction. This is a claim for labor and/or materials allegedly supplied by the plaintiffs to the defendants, with a value of $5,713.52.

■ In Count IX, a declaratory judgment is sought as against the Secretary of the Department of Transportation and the Urban Mass Transportation Administration (UMTA), which administers the Urban Mass Transportation Act of 1964. Jurisdiction allegedly arises because "a department of the United States" is involved. The claim supposedly involves a federal question, violation of federal law and unfair competition under Title 28 of the U.S. Code. The heart of this complaint seems to be an allegation that UMTA and DOT have encouraged BAT to "take over private enterprise" by providing greater incentives if BAT can increase ridership. The alleged "takeover" by BAT of the "In-service Program" and the use of statistics from this program for further funding through UMTA and DOT is described as a violation of federal law by the administration and the department, in that they provided financial assistance to BAT to engage "in competition with private school bus opera-

tors." (See paragraph 159 of the complaint.) Succinctly stated, plaintiffs say that DOT and/or UMTA may not grant federal monies to BAT to compete with other transit services in the area. Parenthetically, it appears that a contract was awarded to another private transit operator. I find it most difficult to comprehend the nature of this vague claim. It appears that Crocker withdrew from negotiations prior to the time that BAT applied for an UMTA Capital Assistance Grant.

As the federal defendants have stated in their brief, the plaintiffs cite no particular provision of Title 28, or of the Urban Mass. Transportation Act of 1964 (49 U.S.C. §§ 1601 *et seq.*) claimed to have been violated. Defendants suggest that perhaps plaintiffs intend to rely upon a possible violation of Title 49, U.S.C. § 1602(g) and/or § 164(b) of the Federal Highway Aid Act of 1973 (49 U.S.C. § 1602a(b). I have, as suggested, studied these provisions. I cannot, based upon the facts alleged in this complaint, comprehend any set of circumstances which, if proved, would establish any violation of the provisions by either DOT or UMTA. The plaintiffs offer no assistance in this regard. They do not spell out any duty on the part of UMTA or DOT arising out of any statute. Since the court has no subject matter jurisdiction, this court could not properly make a declaration of rights or duties.

Finally, on consideration of the Federal Highway Aid Act of 1973, the complaint itself indicates that BAT is not engaging in "school bus operations, exclusively for the transportation of students and school personnel, in competition with private school bus operators." Title 49, U.S.C. § 1602(g).

With the single exception noted hereinbefore, the motions to dismiss are granted. The defendants may prepare and submit an appropriate order for signature.