Robert A. WALTON, and Regina
A. Walton, Plaintiffs,

v.

DIVISION OF REVENUE, FOR the
STATE OF DELAWARE, and William
Remington, Director of Revenue, Defen-
dants.

Civil Action No. 96–163–JJF.

United States District Court,
D. Delaware.

April 1, 1997.

Robert A. Walton, Regina A. Walton, pro se.

Stuart B. Drowos, Deputy Attorney General, Department of Justice, Wilmington, DE, for Defendants.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

On March 29, 1996, Plaintiffs, Robert and Regina Walton, filed a Complaint against Defendants, the Division of Revenue for the State of Delaware (the "Division") and William Remington, the Division's Director of Revenue. (D.I.1). Plaintiffs seek relief under 42 U.S.C. § 1983 alleging that Defendants deprived Plaintiffs of their right to property and their right to due process under the Fourteenth Amendment.

Presently, before the Court are Plaintiffs' Motion for Summary Judgment (D.I.10) and Defendants' Cross–Motion for Summary Judgment (D.I.16). For the reasons discussed, the Court has denied Plaintiffs' Motion for Summary Judgment and granted Defendants' Motion for Summary Judgment.

## II. BACKGROUND

On or about November 9, 1990, Defendants mailed Plaintiffs a Notice of Jeopardy Assessment, pursuant to 30 Del.Code § 1221. The assessment was based upon allegations of fraud on the part of Plaintiffs in submitting their personal tax returns for 1986 and 1987.

The Notice was unsigned and undated; however, the Notice contained all other information relevant to advise Plaintiffs of a perceived tax delinquency for the years 1986 and 1987. The Notice informed Plaintiffs that they had ten days from the date of notice to file a. written request for reassessment accompanied by a bond or security in the amount of the assessment and to formally request an oral hearing on the matter.

On or about November 16, 1990, Plaintiffs forwarded a letter to the Division denying liability for the tax assessment of November 9, 1990. The Division received the letter on or about November 19, 1990; however, the letter did not request a hearing nor did it include the required bond or security necessary to perfect the appeal. Plaintiffs' letter requested that the Division "correct [its] records accordingly."

Around this same time period, Plaintiffs allegedly phoned Deputy Attorney General Donald E. Gregory, at the Division to inquire about a substituted form of security. Plaintiffs contend that they offered title of a 1985 Mercedes Benz automobile in lieu of bond or other security.[1] However, Mr. Gregory does not recall such a conversation with Plaintiffs, and asserts that he never agreed to accept Plaintiffs' offer of the vehicle.

On January 2, 1991, Plaintiffs requested a hearing after receiving a Notice of Intent to Enter Judgment. At about the same time, Defendants sent Plaintiffs a Notice of Intent to Enter Judgment. On January 31, 1991, final judgment in favor of Defendants and against Plaintiffs was entered and became a lien of record. Thereafter, Defendants provided Plaintiffs with annual updates of accrued interest.

In December 1994, Plaintiff Robert Walton, met with a Division attorney, Harry Rhodes III, Esquire. The attorney mailed a letter to Plaintiff summarizing the meeting and reminded Plaintiffs that the judgment entered January 31, 1991, was considered final because of Plaintiffs' failure to perfect their appellate rights under 30 Del.Code § 1221; however, Rhodes reminded Plaintiffs that they could obtain further review by paying the assessment and then filing a claim for a refund.

---

1. Defendants assert that the vehicle was already subject to a racketeering lien imposed by the State in January 1990 and a copy of this lien had been provided to Robert Walton at about this time. (D.I. 17 at 3 and Exhibit D).

At about the same time, Defendants assert that they were notified that Plaintiff, Regina Walton, received as part of an inheritance, title to real property, which she subsequently decided to sell. During the course of the title search, the tax judgment lien was discovered and the judgment/assessment was paid on March 17, 1995, from the proceeds of the sale of the real estate.

Plaintiffs then filed a petition with the State of Delaware Tax Appeal Board (the "Board") seeking redetermination of the alleged tax deficiency. The Board scheduled a hearing for November 13, 1995, to determine whether it had subject matter jurisdiction, and the Board advised Plaintiffs at that hearing that it lacked subject matter jurisdiction to hear any constitutional issues. On March 10, 1996, the Board notified Plaintiffs that it indeed lacked subject matter jurisdiction. On March 29, 1996, Plaintiffs filed their Complaint in this Court.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The task of the court at the summary judgment stage is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the nonmoving party, is entitled to have all reasonable inferences drawn in his favor, *see J.F. Feeser v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), the evidence of record must be such that a jury could reasonably find for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### B. Defendants' Eleventh Amendment Claim and the Damage Relief

Defendants contend that Plaintiffs have initiated this action against a State of Dela-ware agency, and therefore, the claim against both the Division and Mr. Remington is barred by the Eleventh Amendment of the United States Constitution.

The Eleventh Amendment "stands for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Eleventh Amendment provides that "the Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Amendment has been interpreted to bar suits in federal courts by citizens of the defendant state. *Hans v. Louisiana,* 134 U.S. 1, 15–18, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890).

■ Thus, the Eleventh Amendment protects against suits brought directly against a state in federal court, *Osborn v. Bank of United States,* 22 U.S. (9 Wheat) 738, 857–58, 6 L.Ed. 204 (1824), and the state's Eleventh Amendment immunity extends to a state agency that is an arm of the state government, *see Florida Dep't Health and Rehab. Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 149–50, 101 S.Ct. 1032, 1033–35, 67 L.Ed.2d 132 (1981). Here, because the Division of Revenue is an agency of the State, the Court must grant Defendants' Motion for Summary Judgment as to the Division on Eleventh Amendment immunity grounds.

■ Similarly, a damage suit against a state officer, in his or her official capacity as a representative of the state's action and liability, is deemed an action against the state, as such, the Eleventh Amendment bars the action. *Ex Parte New York,* 256 U.S. 490, 500–501, 41 S.Ct. 588, 590–91, 65 L.Ed. 1057 (1921); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (suit against official in his or her official capacity is no different than suit against state itself). Accordingly, to the

extent that Plaintiffs have made a claim against Defendant Remington in his official capacity, the claim is barred by the Eleventh Amendment, and the Court must grant Defendants' Motion for Summary Judgment.

### C. Qualified Immunity and Plaintiffs' Damages Action Against Defendant Remington Personally

To the extent that Plaintiffs are asserting a constitutional claim against Defendant Remington in his individual capacity for "for refusing to grant Plaintiffs an opportunity for a hearing and acting on an invalid document," the Court must determine whether Defendant Remington is entitled to qualified immunity.

■ Before the Court addresses the issue of qualified immunity, it must first determine whether Plaintiffs have alleged a violation of a constitutional right. *See Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991); *Acierno v. Cloutier,* 40 F.3d 597, 607 (3d Cir.1994) (in banc). If the Court finds a violation of a constitutional right, the Court must then determine whether the right alleged to have been violated has been "clearly established" in a more "particularized, and hence more relevant sense." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The Court makes this inquiry because government officials performing discretionary functions are shielded from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (this is an objective rather than a subjective inquiry).

In the instant case, the Court concludes that Plaintiffs have failed to establish a violation of a constitutional right on the facts alleged, and if such a violation could be made out from the facts alleged, the right purportedly violated is not "clearly established" in the more particularized manner required. In making its determination, the Court is mindful that determinations of whether a defendant is entitled to qualified immunity must be made by balancing the important policy of compensating individuals for the deprivation

of their rights against the need to protect officials who must exercise their discretion and the related public interest in encouraging vigorous exercise of official authority. *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982).

As a preliminary matter, the Court finds that the state statute clearly indicates that the act of issuing the Notice of Jeopardy Assessment is discretionary in nature, 30 Del.Code § 1221, and therefore, Remington's actions in issuing the Notice in this case are properly examined under the qualified immunity doctrine.

■ Turning to the issue of whether Plaintiffs have made out a constitutional violation, Plaintiffs claim that Remington should be personally liable in a damages action because the Notice was unsigned and undated; and therefore, Plaintiffs claim they were not given proper notice, which amounts to a violation of their due process rights. The Court does not agree.

The thrust of the relevant statute is to provide notice to parties of a presumed deficiency and of the immediate need for payment of the same. So long as the notice originates from the taxing agency, the author of the notice is inconsequential. In the instant case, the author's name was in fact on the Notice, only the formal signature of the author was lacking. Further, Plaintiffs acknowledged that they received the Notice, and they responded within the required 10 day time period. Accordingly, the Court concludes that the fact that the Notice was unsigned and undated did not impact the effectiveness of the Notice itself or constitute evidence of wrongdoing by Remington. Most importantly, the absence of a date and signature did not prevent Plaintiffs from making a timely response to the Notice. Thus, the Court cannot conclude that Plaintiffs have made out a constitutional claim for denial of due process for lack of adequate notice; and therefore, the Court must grant Defendants' Motion for Summary Judgment as to this claim.

■ Plaintiffs also contend that statute of limitations had run for the jeopardy assessment for 1986, and therefore, any action by

Remington to recover those monies was improper. However, fraudulent returns are deemed to toll the statute of limitations, allowing Defendants to mail notice of a proposed assessment at any time. 30 Del.Code § 531(c). In this case, Defendants based the assessment on allegations of fraud on the part of Plaintiffs. Accordingly, a claim that this action by Remington was improper as beyond the statute of limitations does not state a constitutional claim, and the Court must grant Defendants' Motion for Summary Judgment as to this claim.

■ Finally, Plaintiffs contend that their due process rights were violated when Defendant Remington denied them a rehearing. However, the Court cannot find conduct attributable to Remington that would make out a constitutional violation. Plaintiffs received the Notice informing them that the jeopardy assessment was immediately due and payable; however, the Notice also informed Plaintiffs that they could obtain a stay and seek reassessment by filing a written request for a hearing within 10 days after receipt of notice; by accompanying the request with bond or other security; and by specifically requesting an oral hearing. Plaintiffs met none of these criteria. Plaintiffs mailed Defendants a letter requesting that Defendants "adjust [their] records accordingly." Although Plaintiffs responded within 10 days, Plaintiffs did not request an oral hearing in this writing, and they did not mention posting bond let alone offer any bond or security as instructed. Although they contend that they had telephone conversations regarding the posting of bond, even if the Court were to accept this assertion as true, they did not comply with the instructions. Thus, the Court concludes that Plaintiffs were provided a meaningful opportunity for a hearing and failed to properly perfect that right. *See Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971) (the root requirement of the Due Process Clause is that an individual be given the opportunity for a hearing prior to any deprivation of a significant property interest). Accordingly, the Court concludes that summary judgment must be awarded to Defendants on this claim.

### D. Plaintiffs Request for Injunctive Relief

To the extent Plaintiffs' seek declaratory or injunctive relief as to the constitutionality of the statute as it allows the Division to require bond prior to a hearing, for the reasons articulated above, the Court concludes that Plaintiffs have failed to make more than a bare assertion of a violation of a constitutional right, and the facts presented simply do not support such an allegation. Accordingly, the Court concludes that to the extent that Plaintiffs seek injunctive or declaratory relief on their claims of due process violations, Defendants' Motion for Summary Judgment must be granted.

### E. Alleged Violations of the Delaware State Tort Claims Act

■ Plaintiffs also raise several state law claims under the Delaware State Tort Claims Act. The Court has supplemental jurisdiction over these state claims if they form part of the same "case or controversy" under Article III. 28 U.S.C. § 1367(a); *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, where the state claims are against the agency or the official in an official capacity, the Eleventh Amendment bars the exercise of federal jurisdiction over the party, the Eleventh Amendment also bars the federal court's exercise of supplemental jurisdiction. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 119–23, 104 S.Ct. 900, 918–20, 79 L.Ed.2d 67 (1984). Therefore, the Court cannot hear Plaintiffs pendent state claims regarding the Division or Remington in his official capacity.

■ Additionally, in the absence of any remaining federal question, and because the Court has determined that summary judgment is appropriate as to the remaining claims against Remington in his individual capacity, the Court will exercise its discretion and dismiss the state law or pendent claims. *United Mine Workers*, 383 U.S. at 727–28, 86 S.Ct. at 1139–40.

### III. CONCLUSION

For the reasons discussed, the Court has denied Plaintiffs' Motion for Summary Judg-

ment (D.I.10) and granted Defendants' Motion for Summary Judgment (D.I.16).