IN THE SUPREME COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| JACQUELINE J. CHRISTMAN, M.D., | § § § | No. 73, 2014 |
| Appellant Below-<br>Appellant, | § § § | |
| v. | § § § | Court Below: Superior Court<br>of the State of Delaware,<br>in and for Kent County |
| STATE OF DELAWARE<br>DEPARTMENT OF HEALTH AND<br>SOCIAL SERVICES and MERIT<br>EMPLOYEE RELATIONS BOARD, | § § § § § | C.A. No. K12A-10-003 |
| Appellees Below-<br>Appellees. | § § § | |

Submitted: June 18, 2014
Decided: July 25, 2014

Before **HOLLAND, BERGER**, and **RIDGELY**, Justices.

## *O R D E R*

On this 25th day of July 2014, it appears to the Court that:

(1) Appellant-Below/Appellant Jacqueline J. Christman, M.D. appeals from a judgment of the Superior Court affirming the decision of the Merit Employee Relations Board (the "MERB") in favor of Appellees-Below/Appellees State of Delaware Department of Health and Social Services ("DHSS") and the MERB. Christman raises two claims on appeal. First, Christman argues that the MERB erred when it found that the DHSS had granted her authority to enforce compliance with standing orders and that she had no reasonable belief that signing standing

orders would jeopardize her medical license. Second, Christman contends that the MERB erred when it found that she was insubordinate in refusing to obtain a personal National Provider Identifier ("NPI")[1] because she had no reasonable belief that the DHSS's use of her NPI would subject her to personal liability. We find no merit to Christman's claims. Accordingly, we affirm.

(2) In November 2011, Dr. Herman Ellis retired from his position of Medical Director at the Division of Public Health ("DPH") of the DHSS. Prior to his retirement, DPH had only one other Medical Director, Christman. Upon Ellis's retirement, Dr. Karyl Rattay, the Director of DPH, decided to combine the two Medical Director positions into a single position, which would be held by Christman. As part of the consolidation of the two positions, Rattay and Crystal Webb, the Deputy Director of DPH, provided Christman with a list of tasks with three discrete deadlines, the last of which fell on November 16, 2011. Rattay and Webb required Christman to sign a revised performance plan, obtain medical malpractice insurance, acquire an NPI, and sign standing orders.[2] She was also

---

[1] The opinions below and the parties refer to a National Provider Identifier as a "National Provider Identification number" or "NPI number." Here, we adopt the term as used in the Code of Federal Regulations, which is a ten-digit number used to identify health care providers. *See* Standard Unique Health Identifier for Health Care Providers, 45 C.F.R. § 162.406 (2005).

[2] The MERB opinion defined a standing order as "a written document containing rules, policies, procedures, regulations, and orders for the conduct of patient care by non-physicians in various clinical situations." *Christman v. Dep't of Health & Soc. Servs.*, No. 12-01-532, Order at 3 (Del. Merit Employee Relations Bd. Sept. 27, 2012).

instructed to sign collaborative agreements with the Advanced Practice Nurses ("APNs").[3]

(3) Christman refused to sign the standing orders because she believed that she lacked sufficient authority to comply with state regulations that require physicians to supervise non-physicians who carry out standing orders. Christman also refused to obtain an NPI, citing concerns over the possibility of incurring personal liability. DPH sought to reassure Christman that she had the necessary amount of authority under the regulation when it requested legal advice from Deputy Attorney General ("DAG") Allison Reardon. DAG Reardon, as counsel for the Board of Medical Licensure and Discipline (the "Medical Board"), informed Christman that DPH was exempted from the most stringent supervision requirements of the regulation and that she did not need "line" supervisory authority to comply with the Medical Board requirements.

(4) Despite these reassurances, Christman continued to believe that she did not have sufficient authority to carry out the DPH directives. In a series of emails, Christman was repeatedly warned that failure to meet deadlines would result in disciplinary action. This culminated in a final warning from Rattay on November

---

[3] An advanced practice nurse, or APN, is "an individual whose education and certification meet criteria established by the Board of Nursing who is currently licensed as a registered nurse and has a master's degree or a postbasic program certificate in a clinical nursing specialty with national certification." 24 *Del. C.* § 1902(b)(1). An APN includes, but is not limited to, "nurse practitioners, certified registered nurse anesthetists, certified nurse midwives or clinical nurse specialists." *Id.*

23rd, which advised Christman that her failure to complete the required tasks by November 28th would result in her termination. The November 28th deadline was later extended to November 30th to accommodate Christman's pre-scheduled leave. But Christman failed to complete any of the tasks before the final deadline. On November 30th, Rattay sent Christman a letter notifying her of Rattay's intent to terminate her for insubordination for failure to sign standing orders and collaborative agreements and obtain an NPI. Christman requested and received a pre-termination hearing. After the hearing, the Secretary of the DHSS terminated Christman on December 29, 2011. Christman grieved her termination before the MERB, which upheld the termination following a hearing.

(5) Christman appealed the MERB's decision to the Superior Court, arguing that the MERB erred by finding that Christman had sufficient supervisory authority as required by the regulation, had no reasonable belief that signing the standing orders without that authority violated the regulation or put her medical license at risk, and was insubordinate in refusing to obtain an NPI. Christman also claimed that the MERB erred when it failed to admit into evidence a document she had submitted to DPH. The Superior Court affirmed the decision of the MERB. This appeal followed.

(6) In this appeal, Christman contends that the MERB erred in its factual determination that Christman had no reasonable belief that signing standing orders

4

would jeopardize her medical license and that she was insubordinate in refusing to obtain an NPI. This Court's review of an administrative agency's decision is the same as the court below.[4] That is, we review the decision of the MERB "to determine whether [it] acted within its statutory authority, whether it properly interpreted and applied the applicable law, whether it conducted a fair hearing and whether its decision is based on sufficient substantial evidence and is not arbitrary."[5] Substantial evidence is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Questions of law are reviewed *de novo*.[7] But we give judicial deference to "an administrative agency's construction of its own rules in recognition of its expertise in a given field."[8] Further, such construction will only be reversed when it is "clearly wrong."[9]

(7) "Under Rule 12.1 of the Board's Merit Rules, 'just cause' requires a showing that (1) the employee has committed the charged offense; (2) the employee has been afforded the due process specified in the Merit Rules; and

---

[4] *Kopicko v. State Dep't of Servs. for Children, Youth & their Families*, 846 A.2d 238, 2004 WL 691901, at *2 (Del. 2004).

[5] *Avallone v. State/Dep't of Health & Soc. Servs. (DHSS)*, 14 A.3d 566, 570 (Del. 2011) (alteration in original) (quoting *Hopson v. McGinnes*, 391 A.2d 187, 189 (Del. 1978)).

[6] *Stanford v. State Merit Emp. Relations Bd.*, 44 A.3d 923, 2012 WL 1549811, at *3 (Del. 2012) (quoting *Avallone*, 14 A.3d at 570).

[7] *Avallone*, 14 A.3d at 570 (citing *Person–Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[8] *Stanford*, 2012 WL 1549811, at *3 (quoting *Ward v. Dep't of Elections*, 977 A.2d 900, 2009 WL 2244413, at *1 (Del. 2009)).

[9] *Id.* (quoting *Ward*, 2009 WL 2244413, at *1).

(3) the penalty is appropriate to the circumstances."[10]  "When the State terminates a person's employment, the MERB presumes that the State did so properly."[11] Thus, the employee has the burden of proving that any termination was without just cause.[12]

(8)  Christman first contends that the MERB erred in its conclusion that she could not be subject to personal liability for the delegation of medical treatment through standing orders.  Christman also argues that she did not have sufficient authority from DPH to properly execute the standing orders.  To the extent that the state employee is sued in her official capacity, she is immune from a monetary judgment under the Eleventh Amendment of the United States Constitution.[13] Similarly, the General Assembly has shielded State officials from civil liability if their alleged tortious conduct (1) "arose out of and in connection with the performance of official duties involving an exercise of discretion," (2) "was

---

[10] *Norcisa v. Dep't of Health & Soc. Servs.*, 89 A.3d 477, 2014 WL 1258304, at *3 (Del. 2014) (citing *Avallone*, 14 A.3d at 569).
[11] *Id.* (citing *Hopson*, 391 A.2d at 188).
[12] 29 *Del. C.* § 5949(b); *see also Avallone*, 14 A.3d at 572 ("The discharged employee has the burden of proving that the termination was improper.").
[13] *See Walter v. Div. of Revenue for State of Del.*, 961 F. Supp. 97, 99 (D. Del. 1997) ("[A] damage suit against a state officer, in his or her official capacity as a representative of the state's action and liability, is deemed an action against the state, as such, the Eleventh Amendment bars the action."). *But see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000) ("Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." (quoting *Dellmuth v. Muth*, 491 U.S. 223, 228 (1989))).

performed in good faith," and (3) "was performed without gross or wanton negligence."[14]

(9) The Medical Board has promulgated regulations governing the conduct of Delaware licensed physicians, which describe in detail the duties of a physician delegating authority to non-physicians through standing orders. Specifically, 24 *Del. Admin. Code* § 1700-11.0 requires that physicians who sign standing orders "provide adequate supervision" of the non-physician's medical activities.[15] But the regulation warns that "[t]he delegating physician cannot be involved in patient care in name only."[16]

(10) The delegation of authority by a physician to a non-physician using a standing order requires either direct or indirect supervision depending on the nature of the activities delegated. A physician is required to directly supervise the non-physician where the non-physician provides a medical diagnosis, institutes "a treatment plan involving prescription medications," or a controlled substance is

---

[14] *Jackson v. Minner*, 74 A.3d 654, 2013 WL 4538321, at *1 (Del. 2013) (citing 10 *Del. C.* § 4001), *reargument denied* (Sept. 10, 2013).

[15] 24 *Del. Admin. Code* § 1700-11.1.1 (2013). The opinions below, as well as the parties' briefs, refer to this regulation as Regulation 21. In 2013, following a comprehensive review of Section 1700, the Medical Board adopted a wholesale revision that, *inter alia*, renumbered Regulation 21 and made changes to its wording that are not relevant to the matter in dispute. We quote from the current text of the regulation, with textual changes described in footnotes. The version of the regulation in effect at the time in controversy was adopted in 2009. *See* 13 *Del. Reg. Regs.* 680 (Nov. 1, 2009), *available at* http://regulations.delaware.gov/register/november2009/final/13 DE Reg 680 11-01-09.htm.

[16] 24 *Del. Admin. Code* § 1700-11.1.1.

renewed.[17]  Direct supervision "requires the delegating physician to be physically on the premises and to perform an evaluation or give a consultation."[18]  "Indirect supervision is required whenever a non-physician evaluates a patient, initiates a non-prescription medication or therapeutic, or renews a previously prescribed medication or therapeutic."[19]  Indirect supervision means that the physician is "either physically present on the premises or readily available by an electronic device."[20]  A physician is "readily available" where he or she is able to arrive at the facility within thirty minutes of being notified.[21]  The failure to comply with these regulations would subject a physician to disciplinary action for "the unauthorized practice of medicine."[22]

(11)  The Medical Board may also provide exemptions to the supervision requirement of non-physicians under standing orders.  These exemptions must be issued every two years and only if the Medical Board finds that (1) the non-physicians have adequate "training and experience," (2) there are satisfactory "[p]rocedural safeguards" in place that would "ensure the safe dispensing of drugs and other therapeutics," and (3) the program does not endanger public health.[23]  In 2006, Dr. Ellis requested, and the Medical Board (then the Board of Medical

---

[17] 24 *Del. Admin. Code* §§ 1700-11.1.3 (originally, "requiring prescription medications"), 11.1.4.
[18] *Id.* § 1700-11.1.3.
[19] *Id.* § 1700-11.1.4.
[20] *Id.*
[21] *Id.*
[22] *Id.* § 1700-11.1.7.
[23] *Id.* § 1700-11.1.6.

Practice) granted an exemption to the 30-minute indirect supervision rule for DPH.[24]

(12) Under our review of the Medical Board's regulation,[25] the plain language requires Christman to supervise non-physicians at least indirectly in their treatment of patients under her standing orders. An exemption would be required because Christman would be unable to respond to all DPH clinics and schools in the state within thirty minutes. In its decision, the MERB declined to address Christman's arguments that she needed an exemption to sign the standing orders because this was not the actual basis for her refusal. The MERB nonetheless concluded that Christman was immune from liability because DPH sufficiently assured her that she had the necessary authority to sign the standing orders based on (1) her inherent authority as a doctor, (2) the Nursing Practice Act,[26] (3) the collaborative agreements with the APNs, and (4) the performance plans that provide authority over the health clinics. But the MERB did not directly address the requirements of the Medical Board's regulations on a physician's delegation of authority to a non-physician using a standing order. Nor did the MERB cite to any

---

[24] *See* Del. Bd. of Medical Practice, Minutes of November 14, 2006 Meeting, at 2 (approved January 9, 2007), *available at* http://egov.delaware.gov/pmc/Minutes/Download/6378.
[25] *See Lawson v. State*, 91 A.3d 544, 549 (Del. 2014) (noting that if a regulation is unambiguous, "then there is no room for judicial interpretation" and "the plain meaning" of the regulatory language controls (quoting *CML V, LLC v. Bax*, 28 A.3d 1037, 1041 (Del. 2011))); *Garrison v. Red Clay Consol. Sch. Dist.*, 3 A.3d 264, 267 (Del. 2010) ("The Court's goal, in construing statutes and regulations, is to ascertain and give effect to the intent of the legislative body.").
[26] 24 *Del. C.* §§1901–31.

authority requiring an employee to articulate the specific reasons for his or her failure to comply with official directives. Therefore, the MERB should have addressed whether Christman required an exemption from the Medical Board's regulations. But this oversight is not dispositive because Christman was not terminated for violating Medical Board regulations. Instead, Christman was terminated for insubordination because her belief that she would incur personal liability was unfounded.

(13) As the record shows, there is substantial evidence to support the MERB's factual conclusion that Christman would not be subject to liability as a result of her signing of standing orders. The DAG, as counsel to the Medical Board, explained by email that Christman was not required to follow the direct and indirect supervision requirements. The DAG further testified that the Medical Board had never brought a disciplinary case against a physician for infractions involving standing orders. In addition, Dr. Rattay signed the DPH standing orders after Christman refused to sign them and did not suffer any sort of liability or disciplinary action. And finally, the MERB found that Christman would have been indemnified by the State for any actions within the scope of her employment.

(14) Further, there is no evidence in the record showing that Christman would not be able to obtain an exemption from the Medical Board's thirty-minute-availability requirement for indirect supervision had she applied. As noted above,

the Medical Board is permitted to grant exemptions to the supervision requirements. Dr. Ellis obtained an exemption in 2006 for the same work. Christman has not presented any evidence to suggest that the staff, facilities, or other bases would be grounds to deny an exemption. Accordingly, there is no reason to believe that Christman would have been disciplined by the Medical Board for fulfilling the requirements of her position as Medical Director. Nor is there any basis for her claim that she could have incurred liability as a result of her professional obligations.

(15) Christman next appears to suggest that even if she was not subject to disciplinary action, DPH never provided her with adequate authority to properly oversee the nurses and other non-physicians who were delegated authority under the standing orders. This is because Dr. Ellis's position included "line" supervisory authority over the nurses in the clinics, which Christman's position description allegedly did not include. But it is undisputed that Christman served as the Medical Director of DPH. Even if the Department's organizational hierarchy did not specifically grant Christman "line authority," Christman, as Medical Director, would have had sufficient inherent authority to oversee and monitor the personnel charged with executing the standing orders that she authorized.[27] This

---

[27] *Cf. Restatement (Second) of Agency* § 73 (1958) ("Unless otherwise agreed, authority to manage a business includes authority . . . . to employ, supervise, or discharge employees as the

authority is bolstered by her revised performance plan, which specifically tasked her with providing "medical leadership for Community Health Services."[28]

(16) Finally, Christman argues that she did not have sufficient authority over non-physicians who were not employed by DPH to enforce compliance with standing orders. Christman, however, fails to allege any specific basis as to why her position as the doctor issuing the standing orders would not meet the level of supervision required by the Medical Board's regulations or would not qualify for an exemption. She merely contends that DPH has not proven that she has the necessary legal authority to issue the standing orders. But Christman has the burden of showing that her termination was without just cause. Having failed to show why the Medical Director position does not include sufficient authority over non-DPH personnel, Christman has failed to meet her burden. Thus, her first claim is without merit.

(17) In her second claim, Christman contends that the MERB's finding that she was insubordinate when she failed to obtain an NPI is not supported by sufficient substantial evidence. The parties agree that insubordination requires that (1) an employee must refuse to obey a directive, (2) the refusal must be willful, and (3) the directive must be reasonable and valid. The parties also agree that refusal

___

course of business may reasonably require . . . [and] to direct the ordinary operations of the business.").

[28] Appellant's Op. Br. Appendix at A30.

to comply with a direct order is not insubordination if the employee has a reasonable belief that the employer's directive was illegal or violated the employee's professional ethical code.

(18) Christman does not dispute the MERB's finding that she refused to obtain an NPI. Instead, she claims that her refusal was justified due to a concern about incurring personal liability for improper billing. According to Christman, her concern was based principally upon articles she had read about federal enforcement of unspecified regulations against individual doctors. The MERB found that these concerns did not constitute a reasonable belief that it was illegal or against Christman's professional ethical code to obtain an NPI. It also noted that Christman, as a state employee using her NPI in the scope of her employment, was entitled to (1) qualified immunity, (2) legal representation by the state, and (3) indemnification.

(19) Christman, on appeal, attacks as legal error the MERB's finding that she was entitled to qualified immunity. She claims that the misuse of her NPI would subject her to liability under federal law, and state qualified immunity would not immunize her from a suit under federal law. We need not address this argument. This is because Christman cites no federal authority under which she could be found criminally or civilly liable. She also never provides any basis to support her claim that obtaining an NPI or allowing DPH to use her NPI for billing

purposes was illegal or a violation of her professional ethical code. Without more, Christman's claimed legal error is without merit.

(20)     These reasons also support the MERB's determination that Christman's belief that obtaining an NPI was illegal or unethical was unreasonable. Because this is a factual determination, we need only find that there is substantial evidence to support MERB's factual conclusion.[29] The only basis for Christman's belief was that she had read articles from the 1990s that described federal enforcement actions against individual doctors for institutional misuse of their NPIs. Yet Dr. Christman never provided those articles, cited to the relevant incidents, or delineated any other basis for liability. As a result, the MERB found her belief was speculative and unreasonable. Because this conclusion was based on substantial evidence, this Court will not disturb it. Accordingly, Christman's second claim also lacks merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

---

[29] *See Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981) ("Reversal is warranted if the administrative agency . . . made findings of fact unsupportable by substantial evidence." (quoting *Kreshtool v. Delmarva Power & Light Co.*, 310 A.2d 649, 652 (Del. Super. Ct. 1973))).